Frances AHERN, Appellant,

v.

**BOARD OF EDUCATION OF the SCHOOL DISTRICT OF GRAND ISLAND, etc., et al., Appellees.**

No. 71–1272.

United States Court of Appeals, Eighth Circuit.

Feb. 29, 1972.

by an FAA controller. The United States apparently did not raise the misrepresentation exception.

Wallace M. Rudolph, Lincoln, Neb., for appellant.

Flavel A. Wright, Lincoln, Neb., for appellees.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and WEBSTER, District Judge.*

MATTHES, Chief Judge.

This suit was instituted in the United States District Court for the District of Nebraska. It has its genesis in a controversy between Frances Ahern, a school teacher, and the Board of Education of Grand Island, Nebraska. The controversy resulted in the dismissal of Miss Ahern from her position as teacher at Grand Island High School. Named as defendants, in addition to the school board, were all directors of the board, the superintendent, assistant superintendent and secretary of the school district, and the high school principal. Miss Ahern alleged in her complaint that she sought to redress the deprivation of rights guaranteed her by the First, Fifth and Ninth Amendments to the United States Constitution and by 42 U.S.C. §§ 1983 and 1985. Jurisdiction was premised upon 28 U.S.C. § 1343. Damages and injunctive relief were sought. The district court, after a plenary trial of all issues, entered judgment for the defendants. Judge Urbom's opinion is reported at 327 F.Supp. 1391 (D.Neb.1971).

We have had some difficulty identifying the precise issues presented by Miss Ahern in her brief. Our conclusion is that the Fifth Amendment is invoked in support of Miss Ahern's allegation that the school board denied her procedural due process, and the First and Ninth Amendments are invoked in support of a claim that the behavior for which she was dismissed was constitutionally sacrosanct. The merit of these claims, and the applicability of the amendments relied upon, will be discussed, *infra*.

The facts preceding Miss Ahern's discharge are fully detailed in Judge Urbom's opinion. 327 F.Supp. at 1392–1396. These findings are supported by uncontradicted evidence and are not challenged. The following restatement of those findings, with some abbreviation, is necessary to a demonstration that the district court's ultimate conclusion was correct.

I

Miss Ahern was employed as a teacher at Grand Island High School from Sep-

* Eastern District of Missouri, sitting by designation.

tember, 1966, until her discharge in March, 1969. During the 1968–1969 school year, Miss Ahern, apparently influenced by an institute she had attended during the summer of 1968 at an eastern university, conceived a philosophy which had the effect of shifting to students many decisions customarily made by teachers. These decisions included the choice of subjects for daily discussion, of course material, and of rules for classroom behavior.

Miss Ahern was assigned to teach four classes of high school seniors in economics and to conduct one study hall during the second semester of the 1968–1969 school year. Early in March, 1969, she absented herself from Grand Island High School and returned to the eastern seaboard for a week-long seminar. School authorities granted permission for her absence and assigned a substitute teacher to her classes. The substitute sought to impose a measure of discipline upon Miss Ahern's classes. The students resisted. Frustration resulted. And, at the end of the week, an unfortunate incident occurred in which the substitute slapped a student several times.

Miss Ahern was informed of the incident by students in her first class on the following Monday, March 17. Her reaction was one of anger, which manifested itself in the following statement: "That bitch. I hope if this happens again all of you will walk out."

The slapping incident immediately became the focus of Miss Ahern's economics classes, her goal being to assist her students in formulating and having effected a school regulation regarding corporal punishment. On Wednesday, March 19, Miss Ahern was called to a conference which was attended by Dr. Eugene Miller, the high school principal, and by the assistant principal and Miss Ahern's department chairman. Dr. Miller reprimanded Miss Ahern during the course of the meeting for calling the substitute teacher a bitch in front of her students. He also directed her to teach economics (rather than politics) in her economics classes and to return to more conventional teaching methods. Miss Ahern also was instructed to restore order promptly in her classes and not to discuss the slapping incident with students or other teachers. Finally, Dr. Miller warned Miss Ahern that she could be suspended from her teaching position for the remainder of the year if she did not comply with his directions.

Miss Ahern deliberately ignored Dr. Miller's directions in the interests of preserving rapport with her students and of guarding her academic freedom to select the method of teaching to be employed in her classrooms. At least some of Miss Ahern's classes continued to discuss the slapping incident and, on Thursday, March 20, a copy of a proposed corporal punishment regulation was sent by messenger from one of her classes to Dr. Miller's office. Accompanying the regulation was a note requesting that the principal come to the classroom to discuss the proposal. Dr. Miller declined that invitation and a subsequent one made by Miss Ahern via a telephone in her classroom.

Before classes began on Friday morning, March 21, a large number of students held a non-disruptive protest meeting in the student lounge. Although the meeting was adjourned at the request of administrators in time for participating students to attend their first classes, several students were tardy. Dr. Miller summoned Miss Ahern to a meeting (which was recorded and later transcribed) at approximately eight o'clock that morning, and made the following statement:

Miss Ahern, I have some statements to make. I ask you to listen and then you will be given an opportunity to speak. Since our meeting on Wednesday morning, you have failed to return to your classes and teach economics as directed. Instead, you have continued to discuss with students, students' rights and teachers' rights and non-rights to the students, and in addition have aided students in preparing slips of paper advocating a protest meeting in the Senior Lounge

this morning. For these reasons and the reasons that we gave you on Wednesday morning, I am suspending you from all teaching duties here at Senior High, effective immediately, until at which time you will be given an opportunity for a hearing before the Board of Education. Dr. Lundstrom, the Superintendent of Schools, will notify you as to the time, day, and place of this hearing. At this time I am asking you to turn in your keys and any personal belongings that you have in the room you may obtain between the hours of nine and ten, tomorrow morning. . . .

\* \* \* \* \* \*

Yes, your suspension will be with pay, your status will be determined at the Board of Education hearing.

Miss Ahern was notified on March 25 that a school board hearing on the matter of her suspension would be conducted on March 27. She apparently did not object to the time of the hearing and did not request a postponement. The hearing was held as scheduled. It lasted approximately three hours and was attended by Miss Ahern, Dr. Miller, members of the board of education, and Miss Ahern's attorney. The hearing was recorded on tape and Miss Ahern prepared a transcript from the recording. It is apparent from this transcript that Miss Ahern was allowed to testify at length and that Dr. Miller testified and was cross-examined by Miss Ahern's attorney. No decision was reached by the school board on the night of this meeting.

The board next held a meeting on March 31, which was attended by Miss Ahern's attorney and at which the board voted unanimously to discharge Miss Ahern for insubordination.

Miss Ahern then brought her suit in the district court. As noted she claimed

to have been deprived of freedom of speech and of her right to teach and to have been denied procedural due process. Damages and injunctive relief were sought.[1] A trial was conducted, after which judgment was entered for defendants. The trial court felt constrained, because of the decision of this court in Freeman v. Gould Special School District of Lincoln County, Ark., 405 F.2d 1153 (8th Cir. 1969), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 to rule that Miss Ahern, as a teacher dismissed during a school year for insubordination, was not entitled constitutionally to a hearing with rights of confrontation and cross-examination of adverse witnesses. 327 F.Supp. at 1400. The district court noted specifically that it had not reached the question of whether Miss Ahern in fact had been afforded an opportunity to confront and cross-examine the witnesses against her. *Id.* at 1399, n. 10. The court concluded that the school board's dismissal of Miss Ahern was based upon the rational ground of insubordination and was not in violation of any substantive constitutional rights belonging to Miss Ahern.

## II

We reiterate at the outset the recent holding of this court, in Cooley v. Board of Education of Forrest City School District, 453 F.2d 282 (8th Cir. 1972), that, in the absence of a countervailing state interest of overriding significance, a school teacher dismissed for cause during the course of a school year is entitled constitutionally to (1) notice of the reason for dismissal and (2) a reasonable opportunity for a hearing at which he or she is able to give testimony and to confront and question adverse witnesses. This is so because:

a mid-year discharge increases the economic hardship and renders even

---

1. It is noteworthy that, had Miss Ahern remained in the employ of the Grand Island School District for the 1969–1970 school year, her salary would have been $10,126. Miss Ahern instead accepted a position in Schenectady, New York, which bore a salary of $13,100. She presently teaches in the Northport, New York, school system where she earns a salary of $17,500. Trial transcript at 225–226.

greater the likelihood that subsequent employment opportunities will be significantly circumscribed. *Cooley, supra*, 453 F.2d at 286.

Freeman v. Gould, *supra*, is distinguishable here, as it was in *Cooley*, because the plaintiffs in *Freeman* were school teachers whose contracts simply had been allowed to lapse.

But to say that a teacher discharged for cause is entitled to a hearing meeting the general standards set out above has no dispositive effect upon this case. Although, as Miss Ahern has observed, she might have been notified with greater precision of the basis for her suspension and dismissal, and the time between the notice and the hearing might have been greater, and the school board might have detailed its decision in a formal writing, none of these ideal conditions are prerequisites to a finding that a hearing has been granted which comports with accepted notions of procedural due process. A fundamental requirement of due process is the opportunity to be heard, "at a meaningful time and in a meaningful manner," Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). This opportunity must be "appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria & Restaurant Workers Union Local 473, A. F.L.–C.I.O. v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

We have no doubt that the hearing afforded Miss Ahern by the Grand Island School Board was entirely adequate to insure her constitutional right to procedural fairness. She clearly understood that the basis of both her suspension and her dismissal was insubordination by reason of her failure to comply with Dr. Miller's instructions regarding the restoration of order and proper curriculum in her classes. The superintendent of schools notified her in advance of the proposed board of education hearing. She was represented by able counsel at the hearing, was permitted to testify, and her counsel was permitted to cross-examine Dr. Miller.[2] We have examined the entire record and are firmly convinced that Miss Ahern was accorded a meaningful hearing at a meaningful time.

### III

This brings us to the subject of academic freedom, which is the basis of appellant's "substantive due process" claim.[3] Miss Ahern has contended basically that her freedom in this area was abridged unconstitutionally when Dr. Miller, dissatisfied with the direction taken by Miss Ahern's classes, ordered her to return to conventional teaching methods, to teach the subjects which she had been assigned to teach, and to restore discipline among her students, and when the Grand Island Board of Education discharged her for willfully disobeying Dr. Miller's directive. We cannot accept Miss Ahern's argument.

Simply stated, our conclusion is that Miss Ahern was invested by the Constitution with no right either (1) to

2. The Supreme Court has recognized the value of counsel's presence at hearings such as the one at issue. Goldberg v. Kelly, 397 U.S. 254, 270–271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Powell v. Alabama, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

3. The court must confess its confusion with Miss Ahern's invocation of the Ninth Amendment in support of academic freedom. To render haircuts and abortions constitutional matters the Ninth Amendment may be essential, but for expressive rights, such as that of teachers to teach, the First will suffice.

On the subject of the appropriateness of amendments upon which Miss Ahern has rested her claims, we note that the Fourteenth Amendment, rather than the Fifth, is the proper basis for a suit, such as this one, seeking to redress an alleged denial of due process by an organ of state or local government.

persist in a course of teaching behavior which contravened the valid dictates of her employers, the public school board, regarding classroom method, or (2), as phrased by the district court, "to teach politics in a course in economics." 327 F.Supp. 1397.[4] Whether she properly might have been discharged for disobeying Dr. Miller's orders in other respects we do not decide. Our holding is merely that the school board had ample cause to dismiss Miss Ahern for insubordination, and that the district court was correct in determining that insubordination was indeed the basis of the board's action.

The judgment of the district court is affirmed.

4. To be sure, the Supreme Court has observed on several occasions that teachers are invested with rights by the First Amendment. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed. 2d 731 (1969); Sweezy v. New Hampshire, 354 U.S. 234, 250, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957); Meyer v. Nebraska, 262 U.S. 390, 400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). And at least once the Court has denominated these rights "academic freedom." Keyishian v. Board of Regents, 385 U.S. 589, 603, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

But the Court recognized just as surely that the state is entitled to prescribe a curriculum for its public schools. Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1969); Meyer v. Nebraska, supra. Further, the state has vital interests in assuring that teachers do not thwart the purpose of developing good and educated citizens, Shelton v. Tucker, 364 U.S. 479, 485, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), and that order is maintained in the schools. Tinker v. Des Moines Independent Community School District, supra; Epperson v. Arkansas, supra; Meyer v. Nebraska, supra; see also Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966).