Cora **GRAHAM**, natural parent and best friend of Geraldine Graham, a minor, et al., Plaintiffs,

v.

Owen **KNUTZEN**, Superintendent of the Omaha Public Schools, et al., Defendants.

No. Civ. 72–0–266.

United States District Court.
D. Nebraska.

Aug. 3, 1973.

Legal Aid Society of Omaha Council Bluffs, Omaha, Neb., for plaintiffs.

Baird, Holm, McEachen, Pedersen, Hamann & Haggart, Omaha, Neb., for defendants.

## MEMORANDUM AND ORDER

SCHATZ, District Judge.

Plaintiffs filed suit challenging the constitutionality of the suspension-expulsion procedures of the School District of Omaha and seeking, *inter alia*, a declaratory judgment "that suspensions of students for extended periods of time without any prior notice or fair and proper hearing are unconstitutional." The Court, in an opinion and order by the late Judge Richard A. Dier, 351 F. Supp. 642 (D.Neb.1972), found that the procedures concerning the removal of children from attendance did not fully comply with the requirements of procedural due process. The members of the Board of Education of the School District of Omaha were ordered to submit amendments to such procedures for approval by the Court. In approving the proposed amendments, the Court ordered the matter held open for six months for consideration of any further amendments recommended by plaintiffs or defendants.

This matter is now before the Court on plaintiffs' motion recommending amendments to suspension-expulsion procedures as follows:

1) Distribution of suspension-expulsion procedures to students and parents;

2) The right of students and parents or guardians to be represented at hearings by a person of their own choosing;

3) The right of the student to automatically return to school in the event that a hearing is not held or a decision is not made within the time limits specified in the suspension-expulsion procedures;

4) Notification of the names of teachers and administrators who have primary knowledge of the facts upon which the recommendation is based in the Recommendation for Reassignment Letter.

Pursuant to an order by the Court, a hearing was held concerning the proposed amendments and from the evidence adduced at the hearing, the Court finds as follows:

Mr. Ronald Webster is the father of Denise Webster, formerly a student at Horace Mann Junior High School. Denise was suspended from school on January 25, 1973, for fighting and was sent home carrying a letter stating the reason for the suspension. After approximately one week, when he had heard nothing concerning readmission of his daughter, Mr. Webster telephoned the school authorities and inquired as to reasons for the delay. He was informed that the reason would be investigated and he later received a letter dated February 14, 1973, setting a hearing for February 19. At the request of Mr. Webster the hearing was postponed until February 22, after which Denise was reinstated in another school. Mr. Webster testified that he did not know that there were official school procedures in suspension-expulsion cases.

Mrs. Alice Fuller is the mother of Lawanna Fuller, a student who was suspended from McMillan Junior High School on February 16, 1973, for fighting and striking several of the teachers. A letter notifying Mrs. Fuller of the reasons for the disciplinary action stated that Mrs. Fuller should arrange an appointment for a hearing as soon as possible, and, in the event she did not make an appointment, a conference with the principal was scheduled for February 23. Due to a death in the family of one of the teachers who was involved in the matter with Lawanna, the conference was rescheduled for March 1. Mrs. Fuller, although she was unaware of the existence of official school procedures in such matters, contacted Mr. Bobby Low-

ery of the Omaha Center for Student Rights and Responsibilities who accompanied her to the conference. When Mr. Lowery was not allowed to be present at the conference, Mrs. Fuller refused to attend. A conference with the Community Counselor was held on March 6, at which time Mr. Lowery was allowed to be present. Lawanna was then reinstated at another school.

In both of the above cases, a hearing was not held within the time specified by the approved suspension-expulsion procedures. In the Webster case this was due to the fact that the school board found it necessary to immediately terminate the employment of a Mr. Williams as the Community Counselor who normally would have handled the investigation and recommendations in the matter. The school authorities did not provide for another administrator to handle the pending cases in sufficient time to meet the seven-day time limit specified by the approved procedures. In the Fuller case, the delay was due in part to the death in the family of one of the administrators, and in part to the administrative backlog involved when Mr. Williams' employment was terminated. Subsequent delays must be charged to the conduct of the parents involved. Further facts will be set out in the opinion.

## CONCLUSIONS OF LAW

■■ At the outset it should be noted that this Court will not substitute its judgment as to appropriate school policies for the judgment of duly elected and appointed school officials. To do so would not only usurp the authority of school officials but would also bring administrative decision-making to a standstill. However, when there is a deprivation of constitutionally protected rights, it is the duty of the courts to remedy the wrong. Esteban v. Central Missouri State College, 415 F.2d 1077 (8th Cir. 1969), cert. denied, 398 U.S. 965, 90 S. Ct. 2169, 26 L.Ed.2d 548 (1970); Healy v. James, 311 F.Supp. 1275 (D.C.Conn. 1970), aff'd 445 F.2d 1122 (2nd Cir.

1971), rev'd on other grounds, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). Our task, therefore, is to determine in light of the recommendations and evidence presented whether the school procedures comport with due process.

"Due process" is an elusive concept. Its requirements vary with the particular situation involved. At the heart of due process lies a balancing test wherein the loss of a particular right (here, the right to attend school) is weighed against the interest of the governmental authority (maintaining order and discipline in the schools). As the significance of the lost right increases, the governmental authority is held to a stricter standard of procedural safeguards. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Justice Frankfurter concurring opinion at 163, 71 S.Ct. at 644); Cooley v. Board of Education of Forrest City School District, 453 F.2d 282 (8th Cir. 1972).

## I. DISTRIBUTION OF POLICIES

The suspension-expulsion procedures grant parents or guardians and students many rights, e. g., the right to request the presence of certain individuals and the right to be accompanied by legal counsel if so requested. As the testimony of Mr. Webster and Mrs. Fuller indicates, many parents may not realize that they have these rights and there is no procedure presently in effect which so informs the parties. Consequently, parents and students may lose some rights which are contingent upon request simply because they did not know such a right existed.

The opportunity to be heard must be "granted at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The Court finds that ignorance of the procedures in question and the rights thereunder may deprive the students and parents of a meaningful hearing. See Escalera v. New York City Housing Authority, 425 F.2d 853 (2nd Cir. 1970). The burden on the school authorities, on the other hand, is slight. As long as they provide the parents or guardians and students facing disciplinary action with reasonable notice of their rights under the procedures, due process is satisfied. While it is not for the Court to prescribe the exact method of implementing this duty, it should be noted that counsel for the defendants stated during oral argument that there would be no objection to enclosing a copy of the procedures in the letter sent to the parents or guardians explaining the reasons for the suspension or expulsion.

## II. REPRESENTATION

Plaintiffs contend that the students and parents or guardians should be allowed, as a matter of right, to be represented by a person of their own choosing, which would include a lay representative. The Court does not agree. The amended procedures allow the students, parents or guardians to be represented by legal counsel at conferences following a suspension to the superintendent's office. This clearly meets the requirements of due process. Ahern v. Board of Education of School District of Grand Island, 456 F.2d 399, 403 (8th Cir. 1972); Fielder v. Board of Education of School District of Winnebago, Nebraska, 346 F.Supp. 722, n. 7 (D.Neb. 1972); Esteban v. Central Missouri State College, 277 F.Supp. 649 (W.D. Mo.1967), aff'd 415 F.2d 1077 (8th Cir. 1969). This Court can find no authority which holds that due process requires *more* than the right to be represented as already provided under the procedures.

Parenthetically, the Court notes that Mr. Lowery, Director of the Omaha Center for Student Rights and Responsibilities, has acted as a representative for students, parents and guardians in many matters involving suspensions or expulsions. He testified that he has been allowed to attend many conferences with principals and that he has never been refused admittance to a conference at a higher level. In light of the school procedures which do not allow, as a matter of right, representation by a person other than an attorney, this testimony indicates an attitude on the part of the school authorities to minimize potential procedural stumbling blocks in an attempt to determine the best interest of the student.

## III. AUTOMATIC RIGHT TO RETURN TO SCHOOL IF A DECISION IS NOT MADE

The suspension-expulsion policies establish certain time limits within which a hearing is to be held or a decision is to be made. Plaintiffs contend that administrative mix-ups and delays may keep a student out of school, without a hearing, for longer than is justifiable. They seek an amendment to the procedures which would allow a student to automatically return to school if a decision is not made or a hearing is not held within the specified time. The evidence does not indicate, however, that such delays occur as a matter of course. Delays to the Webster and Fuller children were attributable to extraordinary circumstances.

The plaintiffs, in effect, attempt to construe due process in terms of rigid time schedules and to "penalize" the authorities for non-compliance by allowing the student to return to school. Aside from the fact that the automatic return to school might well operate to penalize the student himself, and his fellow students, due process does not require unyielding time barriers. "The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property." Fuentes v.

Shevin, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). Due process must be measured against a standard of reasonableness. Jones v. Snead, 431 F.2d 1115, 1117 (8th Cir. 1970). A day or two delay between exclusion from school and hearing with the Community Counselor or assistant superintendent might not be unreasonable but a lapse of several months might amount to such a substantial deprivation as to violate due process. It is incumbent upon the school authorities to provide the student with an opportunity to be heard within reasonable time after his exclusion from school. Cf. Fielder v. Board of Education of School District of Winnebago, Nebraska, supra. What is a reasonable time may vary with the circumstances of a particular case. In some instances, it may be necessary to have psychological or medical tests of the student and a study of his home environment before an informed decision can be made. Whether or not a student has been kept out of school without a hearing for an unreasonable period of time will depend upon the facts and circumstances of each case. Without such a showing, and there has been none here, there is no reason to impose a rigid time schedule upon the defendants.

## IV. PRIOR NOTIFICATION OF NAME OF SCHOOL OFFICIALS HAVING PRIMARY KNOWLEDGE OF THE FACTS IN SUSPENSION TO SUPERINTENDENT'S OFFICE

The suspension-expulsion procedures provide that in expulsion cases the letter which notifies the parents or guardians and students of the reason for the proposed action shall contain names of school administrators having primary knowledge of the facts. Plaintiffs argue that this should also be the procedure in cases involving a suspension to the superintendent's office. The Court agrees. A suspension to the superintendent's office may involve over ten school days' absence from school. The student has an opportunity to present his version of the facts to the principal and to a Community Counselor. If their decision is adverse to the student, he or she may appeal to the Board of Education. However, all this takes time and the student remains out of school in the interim. If there is any evidence which will shed some light on either the factual situation giving rise to the disciplinary action or on some factors relevant to the proper treatment of the student, it is essential that it be revealed at the earliest possible stage of the proceedings. Divulging the names of school officials who have such knowledge will give the student, parents or guardians, the opportunity to discuss the facts with the authorities involved. It will also enable them to present the student's side of the event in a more meaningful manner.

This is not to equate the disciplinary hearing with a criminal trial. Jones v. Snead, supra. The primary function of the disciplinary conference is to determine what is best for the student and his fellow classmates. In balancing the relative interests of all parties concerned, the Court feels that the interest of having a full and complete disclosure of the facts at an early stage far outweighs the minimal burden on the school officials to provide for such notification. See Zanders v. Louisiana State Board of Education, 281 F.Supp. 747 at 758 (W. D.La.1968); Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027 (1969). Therefore, in cases involving suspension to the superintendent's office the defendants will be required to notify parents or guardians and students of the names of teachers and administrators having primary knowledge of the facts.

This matter has been in abeyance since the order mentioned above was entered in October, 1972, for the purpose of developing a workable set of suspension-expulsion procedures which is now accomplished. The Court finds that further supervision of this matter would be unnecessary and unjustified. See Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973).

Therefore, the Court will separately enter an order herein, in conformity with this memorandum, which shall be final for all purposes.