Darwin **VALTER**, Appellant-Respondent,

v.

**ORCHARD FARM SCHOOL DISTRICT,**
a Corporate Body, et al.,
**Respondents-Appellants.**

Nos. 59544, 59125.

Supreme Court of Missouri,
Division No. 2.

Sept. 13, 1976.

Motion for Rehearing or Transfer to Banc
Denied Oct. 12, 1976.

Robert C. Jones, Clayton, for appellant-respondent.

John L. McMullin, St. Louis, for respondents-appellants.

FINCH, Presiding Judge.

The cross appeals in this case involve an action wherein plaintiff, a teacher, sought reinstatement, back pay and damages following his discharge by defendant school district. Count I thereof asked that plaintiff be declared to be a tenured teacher and that as such he be reinstated with back pay. In the alternative, Count II sought a determination that even if plaintiff was not a tenured teacher, his discharge was accomplished through a denial of due process. It asked for reinstatement and back pay plus damages. The trial court found for defendant on Count I and plaintiff has appealed therefrom. On Count II the court held that by the midterm discharge plaintiff was denied due process of law. He was awarded a judgment for salary for the remainder of

the school year but denied reinstatement. Both plaintiff and defendant appealed from that judgment.[1]

Jurisdiction in this court is asserted on the basis that the case involves construction of the due process clauses of the state and federal constitutions (Art. I, § 10, Mo. Const. and the 14th amendment to the U.S. Const.) as they relate to a midterm dismissal of a nontenured teacher under the provisions of § 168.126,[2] a question not previously decided in this state. We conclude that we do have jurisdiction on that basis. We affirm the judgment on Count I but reverse on Count II.

Plaintiff was employed by the Orchard Farm School District as a social studies teacher on October 13, 1969, effective October 15, 1969, for the remaining 165 days of the 1969–70 school year. Thereafter, his contract was renewed each spring for the school years 1970–71, 1971–72, and 1972–73. He taught as a full time teacher during each of those years.

On April 3, 1973, the school board voted on whether to reemploy both tenured and nontenured teachers for the 1973–74 school year. A motion not to reemploy plaintiff, classified as a nontenured teacher, was adopted. The teachers of the district then went on strike because the board had failed to reemploy plaintiff and two other nontenured teachers, Mrs. Schimzel and Mrs. Blair. The CTA (the teachers association) demanded reemployment of these three teachers as a condition for ending the strike. A week or so later, the school board authorized contracts for the three teachers for 1973–74 and the strike ended.

As a part of its decision to renew the contracts for those three teachers, the board directed the school superintendent to send to each teacher a so-called 90 day

1. There was a Count III which alleged that the discharge of plaintiff immediately followed and was the result of publication of an article in the school paper wherein plaintiff was quoted as saying that there had been no significant improvement in the Orchard Farm School since he had been there and that such discharge violated plaintiff's constitutional right of free speech. The court found for defendant on this count at the end of plaintiff's case and no appeal was taken therefrom.

2. All statutory references are to RSMo 1969 unless stated otherwise.

letter of inefficiency.[3] The president of CTA appeared before the board and requested that delivery of these letters be postponed until the start of school in the fall rather than being sent immediately. The board acquiesced in that request and the 90 day letter to Valter was not sent by the superintendent until August 31, 1973. It listed deficiencies as follows:

"1. Prompt attendance

"2. Effective use of teaching methods

   a. Develop and follow lesson plans

   b. Develop and define behavior objectives

"3. Develop better classroom control"

On receipt of the 90 day letter, Valter wrote to Superintendent Griffin asking for more specific information as to the deficiencies listed in the August 31 letter. On September 10, Superintendent Griffin replied that the August 31 letter was self-explanatory.

It was customary for teachers to be evaluated twice a year by the school principal. Pursuant to that practice, John Glore, who had replaced Finnel as principal of the school where Valter was teaching, promptly commenced observance and evaluation of Valter. On September 18, 1973, he gave Valter a two page memorandum covering his observation during the week of September 10 through 14, including a conference with Valter on the latter date. He reviewed what was done in an eighth grade class on each of the five days and stated that he had two very strong concerns about Valter's teaching. In the first place he stated that the lesson on the various days was not related to the lesson on other days and that he couldn't determine Mr. Valter's method of teaching American history from those five lessons. Secondly, he pointed out that Mr. Valter's system seemed to be a simple worksheet coding routine which was busy work and did not involve much initia-

tive or thinking on the part of the student. Students spent most of their time filling out or "coding" a printed sheet containing questions concerning Time magazine, the textbook or other materials. He requested Mr. Valter to vary his teaching techniques and to rely less heavily on the coding system and on such materials as Time.

Observance of Valter by Glore continued during the fall and on November 20, 1973, he made his written evaluation report to the superintendent. Two of the nine instructional competence criteria listed on the evaluation report form were rated as ones in which he needed improvement and five were rated as unsatisfactory. Of seven criteria for professional attitudes and characteristics, two were listed as requiring improvement and five as unsatisfactory.

A copy of the Glore evaluation was furnished to Valter who appealed therefrom as established procedure permitted. Upon receipt of that appeal the superintendent designated as appeal officer a Mr. Doyle, director of special services, who was in charge of curriculum and instruction. Doyle visited Valter's classroom on November 26, 27 and 28, 1973. He then made a written report to the superintendent, with a copy furnished to Mr. Valter. He did not undertake therein to review the criteria items relative to professional attitudes and characteristics, but with reference to instructional competence reported that Valter had continued to use the coding system, with worksheets as his major instructional method in spite of the principal's directive to teach a comprehensive survey course in American history, and to rely less on the use of Time magazine and coding sheets. He found no apparent sequence to the topics considered in class. He also found that the evidence supported the principal's criticism of Valter with reference to measuring and grading student progress.

---

**3.** Such letters list asserted deficiencies in the performance of the teacher. They conform to the provisions of § 168.126(2), giving 90 days in which to improve and indicating that dismissal or nonrenewal of the teacher's contract may follow insufficient improvement. Valter previously had received a 90 day letter dated January 12, 1973, from the then principal, Mr. Finnel, following an evaluation during the fall in which it was noted that he needed improvement in the use of effective teaching methods. An evaluation by Finnel during the spring of 1973 did not list any deficiencies.

On November 29, 1973, the superintendent wrote Mr. Valter that his 90 day probationary period had ended and the board would not decide whether his employment would continue or be terminated. He advised that if Valter desired an audience with the board, it would be scheduled for the evening of December 10, 1973.

In response Valter wrote on December 3, 1973, complaining that the letter did not contain a statement of charges, did not indicate what recommendation the superintendent would make to the board and did not spell out the procedure to be followed. He then itemized 13 procedures which he would expect to be followed and advised that he would object to any hearing not conducted in accordance therewith.

The superintendent replied on December 6, 1973, stating that Missouri law did not require a hearing but the board was giving Valter the opportunity therefor if he so desired. It rejected some of the conditions and procedures listed in Valter's letter of December 3 but acquiesced in some, such as the right to be represented by counsel, to offer evidence and to cross-examine. It stated that a transcript would not be furnished but that Valter could record the hearing at his own expense if he so desired.

The hearing was held on the evening of December 10, 1973. Valter testified on his own behalf and Paul Barr, CTA president, and Tom King, a teacher, made statements on his behalf. Glore and Doyle, then testified on behalf of the school district. On the basis of findings during his evaluation Glore recommended that Valter's employment be terminated. The board postponed a decision until its meeting on December 17, 1973, at which time it voted unanimously to terminate Valter's employment as of December 18, 1973. The motion stated that termination was "for the reason that his work as a teacher has been unsatisfactory in accordance with his evaluations by Mr. John Glore and Mr. Larry Doyle." Pursuant to that action, Valter was notified by telegram and by letter that his employment was terminated.

The first issue for determination is whether Valter was a permanent (tenured) teacher or whether, as the trial court found, he was a probationary teacher. Sec. 168.-104 defines a permanent teacher as one "who has been employed * * * as a teacher in the same school district for five successive years and who has continued or who thereafter continues to be employed as a full-time teacher by the school district; * * *." It defines a probationary teacher as one "who has been employed full time in the same school district for five successive years or less", with the proviso that the board of education shall waive one year of the probationary period if the probationary teacher has been employed in any other school system as a full time teacher for two years or more. Valter's prior employment in other schools qualified him for this credit of one year, with the result that we must determine whether he was employed by the Orchard Farm School District for four successive years and was thereafter continued as a full time teacher.

Valter began his employment with Orchard Farm on October 15, 1969, and worked for the remainder of the school year. Thereafter, he served full time during the school years 1970–71, 1971–72 and 1972–73. He then was reemployed for the year 1973–74. Does that constitute full time employment for four years with continued employment for a fifth year? This question necessarily involves a determination of the meaning of the term "year" as used in § 168.104(4) and (5) and whether his employment during the 1969–70 school year qualifies as a year of employment.

This precise question was at issue in *Hirbe v. Hazelwood School District,* 532 S.W.2d 848 (Mo.App.1975). In that case the teacher first was employed in December 1968 to teach the remainder of the school year ending June 30, 1969. If that period constituted a year within the meaning of § 168.104(4), the plaintiff in that case acquired permanent teacher status when he was reemployed in 1972, but if the seven month contract did not qualify as a year, then he did not complete his required four

years (he had served two years elsewhere) until June 30, 1973, and was not a tenured teacher. After considering various cases, including some from other states, and certain statutes including § 160.041,[4] the court concluded that "year" as used in the Teacher Tenure Act had reference to a school year commencing July 1 and ending the following June 30 and that a contract for part of such year would not qualify as one of the required years under the provisions of § 168.104(4).

■ We agree with this holding in *Hirbe*.[5] His employment for part of the 1969–70 school year did not qualify as a year of employment as a probationary teacher. The first year of such employment that qualifies was the year 1970–71. Accordingly, we hold that Valter is not a permanent or tenured teacher and we affirm the decision of the trial court as to Count I. In so deciding, we have considered the other out-of-state cases cited and relied on by plaintiff. They do not persuade us that the interpretation of § 168.104(4) in *Hirbe* is incorrect.

The second question for resolution is whether the midterm dismissal of Valter violated any due process rights belonging to plaintiff.

■ He first claims that he did not receive the notice required by § 168.126(2) which governs termination of employment of a probationary teacher. It provides in pertinent part as follows:

"If in the opinion of the board of education any probationary teacher has been doing unsatisfactory work, the board of education through its authorized administrative representative, shall provide the teacher with a written statement definitely setting forth his alleged incompetency and specifying the nature thereof, in order to furnish the teacher an opportunity to correct his fault and overcome

his incompetency. If improvement satisfactory to the board of education has not been made within ninety days of the receipt of the notification, the board of education may terminate the employment of the probationary teacher immediately or at the end of the school year."

As previously noted, the superintendent's letter of August 31, 1973, listed asserted areas of deficiency as required by § 168.126(2). Valter argues that by December 10, 1973, the date of the hearing, the items listed in the August 31, 1973, letter "had been largely taken care of" and that "things testified to at the hearing were not things that were on the 90 day letter of August 31, 1973". On that basis he says that he did not receive the written statement required by § 168.126(2).

We disagree. Item 2 in the August 31 letter specified a failure to utilize effective teaching methods. That was what the September 18, 1973, memorandum from Glore to Valter, Glore's subsequent November 20, 1973, evaluation report and Doyle's November 28, 1973, appeal evaluation report were all about. They discussed Valter's almost complete utilization of his coding system, his overemphasis on using Time magazine and other such materials instead of the American history text ("a potpourri of topics"), the absence of correlation between classes from one day to the next, the lack of class discussion between teacher and students, the need to establish and follow a guide in the 8th grade social studies class ("too much time away from the assigned course of study") and unsatisfactory measurement of student progress. These all relate a lack of effective teaching methods, an absence of good lesson plans and a failure to develop objectives. At the hearing on December 10, 1973, it was these same things that Glore and Doyle stressed in their oral statements. They were the

4. Provides that a school year commences on July 1 and ends on June 30 following.

5. Application to transfer pursuant to Rule 83.-03 V.A.M.R. was made in *Hirbe* but it was denied by this court. Denial of such an application does not mean that this court approves

and in effect affirms the decision of the court of appeals. It means only that the court did not find reason to transfer that case. However, as we now indicate, we do agree with the interpretation of § 168.104(4) adopted in *Hirbe*.

things upon which the board relied in terminating Valter's employment. We conclude and hold that the August 31 letter did refer to the teaching deficiencies for which Valter was terminated. It was adequate notice to Valter.

The next issue presented is whether there was a denial of constitutionally required procedural due process in the midyear termination of Valter's contract for the 1973–74 school year and, if there was, the extent of relief to which he is entitled.

It is Valter's position that due process requires notice and a hearing as a condition to midterm dismissal of a probationary teacher. He cites *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) as authority for that proposition. Actually, *Roth* involved a university teacher who was informed that he would not be reemployed for the following year, not a teacher who was terminated during his contract of employment. It held that the teacher had been employed for a period ending June 30 and that the contract conferred no right on the teacher to have his contract extended if insufficient cause for termination existed. Hence, he was not entitled to procedural due process as part of the decision not to reemploy. In so ruling the U. S. Supreme Court stated at 576, 92 S.Ct. at 2708,

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms."

The court then proceeded to give examples of property interests safeguarded by procedural due process and included therein was the following:

" * * * Similarly, in the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, *Slochower v. Board of Education,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692, and *college professors and staff members dismissed during the terms of their contracts, Wieman v. Updegraff,* 344 U.S.

183, 73 S.Ct. 215, 97 L.Ed. 216, *have interests in continued employment that are safeguarded by due process. * * * "* (Emphasis added.)

The foregoing dicta expressed the view that when a teacher is discharged during a contract term, procedural due process is required. In *Cooley v. Board of Education of Forrest City School District,* 453 F.2d 282 (8th Cir. 1972), the court dealt with such a situation wherein a teacher was summarily discharged during the school year without notice or a hearing. In holding that the discharge was constitutionally invalid, the court discussed the need for procedural due process, saying at 286:

" * * * We think, contrarily, that as a matter of procedural Due Process the interest of a public school teacher in his continued employment until the natural expiration of the academic years is, in the absence of a countervailing state interest of paramount significance, sufficiently fundamental to prohibit his mid-term discharge without an explication of the reasons which underlie termination and the opportunity meaningfully to be heard with regard thereto. * * * "

This view was reiterated in *Ahern v. Board of Education of School District of Grand Island,* 456 F.2d 399 (8th Cir. 1972), wherein the court said at 402:

"We reiterate at the outset the recent holding of this court, in *Cooley v. Board of Education of Forrest City School District,* 453 F.2d 282 (8th Cir. 1972), that, in the absence of a countervailing state interest of overriding significance, a school teacher dismissed for cause during the course of a school year is entitled constitutionally to (1) notice of the reason for dismissal and (2) a reasonable opportunity for a hearing at which he or she is able to give testimony and to confront and question adverse witnesses. This is so because:

a mid-year discharge increases the economic hardship and renders even greater the likelihood that subsequent employment opportunities will be signifi-

cantly circumscribed. *Cooley, supra,* 453 F.2d at 286."

■ Mr. Valter was discharged during the 1973–74 school year for which he had been employed. Under the foregoing cases, he was entitled to procedural due process in that determination. Whether what occurred was sufficient to provide due process is an issue we must resolve.

■ As previously noted, the first requirement of procedural due process is that adequate notice be given. We have held that the 90 day letter of August 31, 1973, supplemented by Glore's September 18, 1973, memo to Valter, the evaluation report dated November 20, 1973, and Doyle's appeal report of November 28, 1973, were ample to advise Valter of the deficiencies for which he might be terminated and, hence, the issues to which he would have to respond.

■ The second requirement of procedural due process is an opportunity to be heard. In *Ahern v. Board of Education of School District of Grand Island, supra,* the court discussed the need for a meaningful opportunity to be heard and held that plaintiff therein had had such an opportunity. In so holding, the court stated, 456 F.2d at 403:

"＊ ＊ ＊ Although, as Miss Ahern has observed, she might have been notified with greater precision of the basis for her suspension and dismissal, and the time between the notice and the hearing might have been greater, and the school board might have detailed this decision in a formal writing, none of these ideal conditions are prerequisites to a finding that a hearing has been granted which comports with accepted notions of procedural due process. A fundamental requirement of due process is the opportunity to be heard, 'at a meaningful time and in a meaningful manner,' *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). ＊ ＊ ＊"

Subsequently, on the same page, the court went on to say:

"We have no doubt that the hearing afforded Miss Ahern by the Grand Island School Board was entirely adequate to insure her constitutional right to procedural fairness. She clearly understood that the basis of both her suspension and her dismissal was insubordination by reason of her failure to comply with Dr. Miller's instructions regarding the restoration of order and proper curriculum in her classes. The superintendent of schools notified her in advance of the proposed board of education hearing. She was represented by able counsel at the hearing, was permitted to testify, and her counsel was permitted to cross-examine Dr. Miller. We have examined the entire record and are firmly convinced that Miss Ahern was accorded a meaningful hearing at a meaningful time."

■ We conclude and hold that what occurred in this case satisfies the procedural due process requirements as spelled out in *Roth, Cooley,* and *Ahern.* Valter did have a meaningful opportunity to be heard with reference to the proposed termination of his employment. He was given the opportunity, which he utilized, of stating his position and presenting other witnesses on his behalf. He was assisted by his attorney who had the opportunity both to present Valter's case and to cross-examine Glore and Doyle, the only two witnesses who testified before the board in support of the idea of terminating Valter's employment. In preparation therefor, Valter and his counsel had available in advance of the hearing the written reports by Glore and Valter from which both testified. In the words of *Cooley,* Valter was provided "an explication of the reasons which underlie termination and the opportunity meaningfully to be heard with regard thereto". 453 F.2d at 287. He was accorded procedural due process. It follows that he was not entitled to either back pay or reinstatement. Judgment should have been for the school district on Count II.

Judgment affirmed on Count I and reversed on Count II.

All of the Judges concur.