MADELINE LANDIS SCHULZ, PROSECUTRIX-RESPONDENT, v. STATE BOARD OF EDUCATION, RESPONDENT, AND BOARD OF EDUCATION OF THE CITY OF NEWARK IN THE COUNTY OF ESSEX, RESPONDENT-APPELLANT.

Argued October 20, 1944—Decided January 4, 1945.

For the prosecutrix-respondent, *Harkavy & Lieb* (*Abraham I. Harkavy*).

For the respondent-appellant, Board of Education of the City of Newark, *Jacob Fox.*

The opinion of the court was delivered by

CASE, J. Respondent, Madeline Landis Schulz, relying upon an alleged right of tenure, appealed to the State Commissioner of Education from the refusal of the Newark Board of Education to appoint her to regular employment. The Commissioner held that she occupied the *status* of a teacher under tenure. The State Board of Education, on appeal, reversed that finding. The Supreme Court, on *certiorari* proceedings, reversed the decision of the State Board; and the present appeal is from the Supreme Court judgment.

The substantial question is whether a "substitute teacher" is a "teacher" within the purview of the tenure statute, *R. S.* 18:13–16 (as amended by chapter 43, *Pamph. L.* 1940).

A state certificate of eligibility (*R. S.* 18:13–1) is a sufficient authority for the holder to teach except in districts where there is, in accordance with the law, an additional requirement. Such an excepted district is the City of Newark, where, under authority of *R. S.* 18:13–2, the rules and regulations provide that all licenses to teach in the public schools of that city shall be granted by the City Board of Examiners following oral, written and health examinations. The Board of Education maintains lists of those persons who have become eligible to appointment as teachers by reason of having passed the examinations of the City Board of Examiners. The lists are separately compiled for the elementary schools, the secondary schools and the teaching of art. The names on those lists are in the order of the marks received in the examinations; and appointments of teachers are made in the same order. The original appointments are probationary and are subject to termination for a period of three years. At the end of that time, under the city regulations as well as under the tenure statute, the appointments become permanent. The city has a second classification known as "substitute teachers." Substitute teachers are generally assigned to do the work of teachers temporarily absent, although occasionally they "fill in" where there is a vacancy

in a regular teacher's position and no regular teacher has yet been assigned. Ordinarily the selection of substitute teachers is made from the lists of candidates eligible for, but not yet appointed to, regular teaching positions, but the rules and regulations permit employment for that class of work of those who hold only the state certificate. Whether a substitute teacher has both the city license and the state certificate, or only the state certificate, the employment is merely as a substitute teacher.

There are fundamental differences between the *status* of persons employed as substitute teachers and that of persons employed in regular teaching positions. The engaging of teachers leading to permanent employment in the City of Newark is, in accordance with the local rules and under the direction of the statute, *R. S.* 18:6–20 (requiring action by a majority vote of the board), done by the Board of Education. The engaging of substitute teachers is otherwise; if such are to substitute on a monthly basis, their names are recommended to the Committee on Instruction by the superintendent of schools; if they are to be on a *per diem* basis, they are assigned from day to day by the superintendent, as occasion requires. Other differences have to do with seniority, with compensated absences, with the rate and unit of compensation, and with the schedules of increases.

Respondent held a state certificate of eligibility, but she did not have and was not entitled to have the city license. Therefore, under the rules, regulations and practices of the district board she was not authorized to teach, and her name was not on any of the lists of persons entitled to be appointed to teach in the City of Newark. During the academic year 1937-1938 she was engaged as a "substitute teacher" at a salary of $120 per month to take the classes of a regularly employed permanent teacher who, constantly on the payroll, was away on leave. The absent teacher returned with the opening of the schools after the summer vacation, and respondent's employment was terminated. For the academic year 1938-1939 respondent was employed as a "substitute teacher" at $160 per month for work made available by a vacancy; and for the year 1939-1940 she was again employed

as a "substitute teacher" for work made available by a vacancy. On September 30th, 1940, respondent signed a written request for employment in "substitute work," and during that academic year, namely, the school year 1940-1941, she was employed for a total of five different days "as a day to day casual and itinerant substitute teacher," each day at a different school on a *per diem* basis ranging from $5.50 for the first day (the day on which respondent completed, as she contends, the period necessary to constitute her a tenure teacher) to $7 for the most highly compensated day; one of the days of employment was in November; two of them were in December and the remaining two were in January; and each employment was to substitute for an absent teacher. Since then she has not been employed. Concededly, up to and after September 30th, 1940, and until the one day of employment as a substitute in November, 1940, respondent had acquired none of the rights which she now asserts. If her earning capacity be determined by multiplying her compensation on the day she claims to have attained the *status* of a tenure teacher by the maximum number of teaching days (191) in the Newark academic year, the total for any year, assuming that she worked every school day, would be $1,050. The judgment under review finds that she did then, namely, on November 8th, 1940, attain tenure, fixes her salary at $1,500 per annum, the salary paid permanently employed teachers in the grade where respondent attained tenure, and makes that salary retroactive, with interest, from that day.

It is respondent's contention that she is entitled to tenure by virtue of section "c" of *R. S.* 18:13–16, as amended by chapter 43, *Pamph. L.* 1940. The statute reads:

"The services of all teachers, principals and supervising principals of the public schools, excepting those who are not the holders of proper teachers' certificates in full force and effect, shall be during good behavior and efficiency, (a) after the expiration of a period of employment of three consecutive calendar years in that district unless a shorter period is fixed by the employing board, or (b) after employment for three consecutive academic years together with employment at the beginning of the next succeeding academic year, or

(c) after employment, within a period of any four consecutive academic years, for the equivalent of more than three academic years, some part of which must be served in an academic year after July first, one thousand nine hundred and forty; provided, that the time any teacher, principal or supervising principal had taught in the district in which he was employed at the end of the academic year immediately preceding July first, one thousand nine hundred and forty, shall be counted in determining such period or periods of employment in that district."

The statute is popularly known as the Teachers' Tenure Act; and although section 16, *supra,* does not use the descriptive word "tenure," section 17 does, viz., "the tenure referred to in section 18:13–16."

The facts come to us by stipulation, appended to which is an undertaking by counsel that respondent is entitled to tenure if certain time computations are allowed in the manner there stated. We accept the facts as stipulated. We disregard the stipulation as to the law. We are called upon to construe an important and far reaching public statute. The law as determined herein will apply, not only to the present litigants, but to all other persons in like relationship confronted with a like state of facts. Our view, and not the agreement of counsel, must control the determination.

We find nothing in the facts presented to warrant the inference that respondent, at any time during the period in question, was employed as a teacher (as that word is used in the Newark rules and regulations and as distinguished from "substitute teacher") by, at the instance of, or with the ratification of, the Board of Education of the City of Newark. We are in some doubt, under the condensed wording of the stipulation, whether the assignments during the academic years 1938-1939 and 1939-1940 were strictly as of a substitute teacher; but, however that may be, the work of those years was not of sufficient duration to have brought tenure even to a person accredited for and occupying the position of teacher under regular employment. The work of the year 1937-1938 was that of a substitute and so was that of the year 1940-1941, which, while only a few days in duration,

is—at least in part—essential to respondent's computation of time under the statute. During the years 1937-1938 and 1940-1941 the board was utilizing, through the usual channels, a substitute teacher for temporary work. Respondent knew that she was taking a temporary appointment and that she was working as a substitute teacher; indeed, that was the character of work that she applied for. She does not claim that she had a regular appointment, or that her designation as a substitute was incorrect, or that a subterfuge was resorted to by the board or any of its representatives to prevent her from obtaining tenure. Whatever authority the board may have conferred, either expressly or by implication, upon the superintendent of schools and whatever ratification by the board of the superintendent's acts may be spelled from the events, that authority and that ratification may not be made to increase the employment beyond that which it was intended by the parties to be and in fact was, namely, an employment as substitute teacher. The logic of the facts leads to the conclusion that respondent's employment was just that—as "substitute teacher."

The argument is that even so she is entitled to tenure for the reason that during the period of four consecutive academic years, namely, the years between September of 1937 and June of 1941, inclusive, she was employed for the equivalent of more than three academic years; and that the statute makes that the qualification for tenure by "all teachers"—an expression which, it is contended, embraces substitute teachers. It is upon the force to be given to that contention, namely, that the expression "all teachers" includes "substitute teachers," that the decision turns; and respondent takes the position that the legislative language is so clear and the inclusion is so manifest that the meaning of the statute is not open to construction and that the "sole question" before this court is the "enforcement" of respondent's tenure. That argument is untenable. The conception that the classification "teacher," as used in the school law and in school practice, is not comprehensive of the classification "substitute teacher" has support in our statutes, in school practices and decisions, and in the opinions of our courts.

First, looking at our statutes, it is to be observed that the clause "c," which is the part of the statute upon which respondent relies, was added by the 1940 amendment, *supra,* approved April 15th, 1940. Six weeks before that time the Supreme Court had decided the case of *Ahrensfield* v. *State Board of Education,* 124 *N. J. L.* 231 (subsequently affirmed by this court, 126 *Id.* 543, partly upon the conclusive effect of the Supreme Court finding as to the facts) holding against the asserted right of tenure of Mrs. Ahrensfield, a regularly employed female teacher, because, at the suggestion of the supervising principal, she had broken the continuity of her employment by resigning one day before the three year period was complete and being re-employed in her position; this because the Board of Education had recently adopted a resolution opposing the placing of married female teachers on tenure and the teacher in question was a married woman. A comparison of the provisions of the amendment with the *Ahrensfield* facts leaves little doubt that the amendment was inspired by and was intended to apply to the incidents of that case, namely, an artificial splitting of the period of employment to avoid the application of the tenure statute to a regularly employed, full-time teacher. We find nothing in the amendment to suggest a legislative purpose to remove any theretofore existing distinction between teachers and substitute teachers. There was nothing new in the use of the word "all" viz., "all teachers," in the 1940 amendment; that terminology had been in the statute from the very beginning, chapter 243, *Pamph. L.* 1909, and the amendment merely preserved, in that respect, the structure of the statute as it had always been. That the legislative mind was not a stranger to the distinction between teachers and substitute teachers is shown by the precise language in the 1919 amendment (chapter 80, *Pamph. L.* 1919) incorporating the pension fund feature in the general public school statute of 1903) (chapter 1. *Pamph. L., Special Session,* 1903) : "No person shall be deemed a teacher within the meaning of this article who is a substitute teacher * * *" (now *R. S.* 18:13–25). We find significance in the legislative recognition, in any respect, of "substitute teachers" as a class distinct from "teach-

ers" and particularly in a respect which carries in favor of teachers a benefit or a protection which is denied to substitute teachers. The pension fund legislation and the Tenure Act (chapter 243, *Pamph. L.* 1909) were not isolated statutes; they were both enacted as integral parts of the same school law and therefore may be said to be *in pari materia*. So, also, chapter 142, *Pamph. L.* 1942, incorporated within chapter 13 (re teachers) of title 18, Revised Statutes, which grants certain sick leave and the retained benefit of minimum unused sick leave absences to teachers "who are steadily employed by the Board of Education on a yearly appointment or who are protected in their positions under the provisions of sections 18:13–16 to 18:13–19 of the Revised Statutes" appears to exclude substitute teachers serving on a daily or monthly basis. And it will hardly be argued that *R. S.* 18:13–118, which provides for compulsory permission to a teacher to be absent at the annual teachers' convention on full pay, or *R. S.* 18:13–1, providing for the selection of representative teachers on the State Board of Examiners, applies to the classification just mentioned. A related instance of legislative intent not to give tenure universally upon mere time of service without regard for attendant circumstances is to be found in the provision (chapter 226, *Pamph. L.* 1944) that the employment of persons temporarily filling the positions of teachers absent on war service shall immediately cease when the incumbent shall return.

Passing to school practices, the City of Newark clearly, as we have seen, distinguished between teachers and substitute teachers. The distinction was drawn openly and honestly. It was known to every interested person, including the respondent, who sought and obtained employment as a substitute teacher. There was no abuse of that distinction—no use of it to evade the tenure statute.

Both the office of the State Commissioner of Education and the State Board of Education have been on record since 1938 (*Walers* v. *Board of Education of Newark, School Law Decisions,* 1938, *pp.* 623, 624) as construing the tenure statute not to include substitute teachers employed to do particular substitute work for absent teachers.

The courts have condemned evasions of the tenure statute and refused to countenance the subterfuge of designating a teacher as a substitute where the service rendered and intended to be rendered was that of a regular teacher. "It clearly appears from the record that the seven persons designated as special substitute teachers were actually continuously employed, the minutes notwithstanding. The action of the board was the merest subterfuge to defeat the legislative purpose * * *." *Downs* v. *Board of Education of Hoboken,* 13 *N. J. Mis. R.* 853 (1935). "The petitioner, like many of the other so-called substitutes, was assigned to a regular position in the same manner as teachers with tenure. The device adopted cannot defeat the purpose of the act * * *. Had the proofs not shown continuous employment for the statutory period, the result would have been otherwise." *Board of Education of Jersey City* v. *Wall,* 119 *N. J. L.* 308 (1938). But we think that the *Downs* decision assumes and that the *Wall* decision concedes the legality of employment and service, in good faith, as substitute teacher and, further, the cleavage between the *status* of such a substitute teacher and that of a regularly employed teacher. The offense in the cited cases was the attempt to conceal the real situation by employing in the guise of substitute teachers those who were really teachers, doing the work of teachers.

It cannot be soundly argued that the classification of substitute teachers separately from teachers is a distinction without a difference, or that the distinction is a frivolous reason for withholding various beneficial incidents, including that of tenure, from substitute teachers. Manifestly, all those who succeed in passing the necessary qualifying examinations do not make equally competent teachers. Those who have superior teaching ability and are able to obtain regular teaching positions elsewhere are not likely to withhold themselves from those permanent positions in order to take substitute work in Newark in the hope and on the chance that during some period of four consecutive academic years they may average a total teaching service equivalent to the teaching time of three academic years and thus attain regularity of employment; which means that as the result of the inevitable

sifting process prospective teachers of most promise are not likely to be long found on the "substitute" lists. In an extensive school system like that in the City of Newark there must be many occasions, some of them emergent, some foreseen and others unforeseen and unforeseeable, for the employment and re-employment by the superintendent of substitute teachers, all of whom may not be of the aptitude desired for regular teaching positions, but who may, nevertheless, be acceptable for fill-in work; and all of whom, again, may not, for reasons of their own, be available for full-time work. The three year period which is, unless shortened by the employing board, a necessary antecedent to the acquisition of tenure, gives, if served under conditions of regular employment, an opportunity for demonstration of character, teaching qualities and ultimate influence upon the personality and mentality of the student which is not afforded by the exigencies and distractions of substitute teaching; therefore, the advantage to the school system of full-time service as a test of teaching values and as a guide to the board in deciding whether to retain a teacher permanently or to end the employment before tenure attaches. There is substance in the distinction.

By the judgment below the Board of Education would be compelled to install the respondent in a teaching position on full salary with full seniority and with all the perquisites and benefits of a regularly employed wholetime teacher—a position that she never had. Our understanding of the tenure statute is that it was intended to save a teacher from loss of her position, not promote her to a position that she never has occupied. What was the old law? What the mischief? That takes us back to the enactment of the tenure provisions in 1909, chapter 243, ·Pamph. L. 1909. Teachers, however efficient, however long their periods of service, were subject to discharge at the whim of the employing board. That, because it threw great uncertainty into the lives of those who had prepared for, been licensed for, and been long employed in, the work of teaching, reduced the morale of the teaching profession and lessened the ambition of competent young people to enter that calling; and this, in turn, served to impair the

standard of the public schools. To remedy that defect, the Tenure Act was passed. And what did it do? It required a preliminary service of three years by a teacher, obviously to give the board ample opportunity for complete observation, and it gave at the end of that probationary period certain protection to the teacher. The protection is still the same, *R. S.* 18:13–17: "No teacher * * * under the tenure * * * shall be dismissed or subjected to a reduction of salary * * * except for inefficiency, incapacity, conduct unbecoming a teacher or other just cause and after a written charge of the cause" has been made and hearing had. Clearly, the protection was not, and is not, intended to be a promotion. Yet here is an applicant who has been granted, under the theory of tenure (strictly, a retention of that which one has) a large increase in the rate of compensation over what she was receiving at the time when, by her contention, her right of tenure matured, as well as other accretions, priorities and advancements—seniority, for illustration, over full time, regularly employed teachers who have not yet attained tenure. This illogical result of the application of the tenure statute to substitute teachers is accented in the case of *Gordon* v. *State Board,* decided simultaneously herewith (*post, p.* 356).

Mere combination of another word with "teacher" does not necessarily extend the classification of "teacher" so as to include the addition. A student teacher, to use a familiar expression, is not regarded as, and is not, a teacher within the meaning of the statute. The word "substitute" usually presents the idea of something or some one substituted for another—not the real thing or the real person, but a "substitute." The word "teacher" does not, in ordinary use, signify "substitute teacher;" and since that is so the word "all" prefixed to the plural does not import that alien meaning.

We conclude that the word "teachers" as used in *R. S.* 18:13–16, amended by chapter 43, *Pamph. L.* 1940, is to be distinguished from and is not inclusive of the expression "substitute teachers."

Furthermore, the tenure statute does not bring tenure to a teacher who has not the necessary teacher's credentials. Section 16, quoted at length above, contains this delimitation:

"excepting those who are not the holders of proper teachers' certificates in full force and effect." In added emphasis of this exception the tenure statute, having provided in *R. S.* 18:13–17 for the making of charges against a teacher under tenure and in section 18 for hearings on such charges, provides in section 19—still dealing with teachers under tenure: "The services of any * * * teacher may be terminated, without charge or trial, who is not the holder of a proper teacher's certificate in full force and effect." Respondent did not, and does not, have the certificates necessary to qualify her as a teacher under the rules and regulations of the Newark Board of Education. For that reason, also, she is not entitled to tenure.

The judgment of the Supreme Court will be reversed.

DILL, J. (Concurring.) I vote to reverse in this case solely because respondent does not have the certificate necessary to qualify her as a teacher under the rules and regulations of the Newark Board of Education and for that reason she is not entitled to tenure.

*For affirmance*—DONGES, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, PORTER, COLIE, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 11.