139 N.J. Super. 175 (1976)
353 A.2d 123
NICOLETTA BIANCARDI, PETITIONER-RESPONDENT,
v.
WALDWICK BOARD OF EDUCATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 9, 1975.
Decided February 6, 1976.
*176 Before Judges LYNCH, LARNER and FULOP.
Messrs. Honig and Honig, attorneys for appellant (Mr. Steven M. Honig on the brief).
Messrs. Goldberg and Simon, attorneys for respondent (Mr. Theodore M. Simon on the brief).
The opinion of the court was delivered by LYNCH, P.J.A.D.
This is an appeal by the Waldwick Board of Education from a decision of the State Board of Education. The State Board affirmed a determination of the Commissioner of Education holding that Nicoletta Biancardi had acquired tenure in the Waldwick school system by reason of her employment in the system from April 27, 1970 to June 30, 1970 and her continued employment thereafter for the three academic years beginning in September 1970 and ending in June 1973. Two members of the State Board of Education dissented from the decision of the majority on the ground that respondent was employed merely as a "substitute teacher" in the spring of 1970.
We reverse substantially for the reasons stated in the dissenting opinion of Calvin J. Hurd, Esq. in the State Board of *177 Education, which was joined in by Mrs. Ruth Mancuso. However, we add the following comments.
The decision of our former highest court in Schulz v. State Bd. of Ed., 132 N.J.L. 345 (E. & A. 1945), is binding upon us until overruled by competent authority. It was there held, as our dissenting colleague concedes, that time served as a "substitute teacher" is not to be counted toward tenure for the reason that such substitutes are not "teaching staff members" within the meaning of the tenure statute, now N.J.S.A. 18A:28-5.
The dissent herein accords the obeisance customarily given a finding of fact by an administrative agency to the finding by the Commissioner that respondent was hired not as a substitute but as a regular teacher in the period from April to June 1970. With due respect to our dissenting colleague we believe such deference is inappropriate here. As in Schulz there are no disputed facts in this case, and our task is to apply the law to these undisputed facts. Schulz, supra at 349. Where the issue is one of law the Commissioner's decision does not carry a presumption of validity, and it is for the court to decide whether his decision (and that of the State Board) is in accordance with the law. See Fanwood v. Rocco, 59 N.J. Super. 306, 315 (App. Div.), aff'd 33 N.J. 404 (1960); Kopera v. West Orange Bd. of Ed., 60 N.J. Super. 288, 296 (App. Div. 1960). As was said in Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973): "An appellate tribunal is * * * in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue."
Here it is uncontroverted that (1) respondent wrote a letter dated May 18, 1970, expressing her desire for a "full time teaching position" in the upcoming year; respondent thus implicitly admitted that, as stated in the local board of education's resolution, she had been hired as a substitute to fill the two-month period of vacancy caused by the departure of a regular teacher; (2) she was not hired at the rate of pay established by the salary guide for a regular *178 teacher ($11,385 a year), but was paid at the rate of $40 a day; (3) she did not receive any of the benefits afforded a regular teacher, such as sick leave, paid holidays and vacation periods, and paid absences for attendance at teachers' conventions (indeed respondent was absent two days during the period from April to June 1970 and was not paid for those days); (4) respondent was not enrolled in the Teachers' Pension and Annuity Fund during the period in question. The Teachers' Pension and Annuity Law, N.J.S.A. 18A:66-1 et seq., expressly provides that "No person shall be deemed a teacher within the meaning of this article who is a substitute teacher * * *." N.J.S.A. 18A:66-2(p). The fact that respondent was not enrolled in the pension plan is additional evidence that she knew she was taking a temporary appointment and was working as a substitute teacher.
The dissent cites Downs v. Hoboken Bd. of Ed., 13 N.J. Misc. 853, 181 A. 688 (Sup. Ct. 1935), and Jersey City Bd. of Ed. v. Wall, 119 N.J.L. 308 (Sup. Ct. 1938), as authority for the proposition that it is the nature of the work that determines whether a teacher is working as a substitute or regular teacher. Downs and Wall are clearly distinguishable from the instant situation. In both cases the teachers involved were really regularly employed teachers, and use of the label "substitute" was a mere subterfuge to evade the tenure act. Schulz, supra, 132 N.J.L. at 353. Here there is no evidence or claim of such subterfuge or bad faith on the part of the Waldwick board of education. As the court said in Schulz:
[W]e think that the Downs decision assumes and that the Wall decision concedes the legality of employment and service in good faith, as substitute teacher and, further, the cleavage between the status of such a substitute teacher and that of a regularly employed teacher. The offense in the cited cases was the attempt to conceal the real situation by employing in the guise of substitute teachers those who were really teachers, doing the work of teachers. [132 N.J.L. at 353]
*179 Respondent argues that in the April to June period she was doing the same work as a regular teacher. As the dissent in the State Board pointed out, all substitutes do the work of regulars when the need to perform those duties arises.
We recognize that in Schulz the teacher involved did not possess a Newark city teaching license. That factor was merely an added reason for the decision, expressed by the court after it had already reached its conclusion that the teacher was not entitled to tenure. 132 N.J.L. at 355. It is clear that the court based its decision on the independent grounds set forth in its opinion before it reached the question of the certificate.
It is undisputed that a board of education has the right to hire teachers as substitute teachers. N.J.S.A. 18A:29-16. Presumably when the Waldwick board hired respondent in that capacity it did so with knowledge of the decision in Schulz, supra, that such a hiring from April to June 1970 was not to be counted toward tenure. Respondent accepted the appointment as a "substitute" without protest, and it would be unfair to retroactively grant her tenure based on that appointment. We agree with the dissent in the State Board that to ascribe permanency to respondent's employment from April to June 1970 would effectively negate and contravene the local board of education's statutory authority to hire respondent as a substitute teacher.
For the foregoing reasons the decision of the State Board is reversed.
FULOP, J.S.C., Temporarily Assigned (dissenting).
Plaintiff-respondent Nicoletta Biancardi is the holder of a permanent teacher's certificate authorizing her to teach in the public schools of the State of New Jersey in grades kindergarten through eight. Effective April 27, 1970 she was employed to teach first grade in a Waldwick school for the rest of the school year through June 30, 1970, in place of a teacher who had left. She had applied for a permanent position but was hired under the title "substitute" *180 with the understanding that her continuation depended on her performance. During this initial period she received $40 a day, a sum greater than the usual per diem rate paid to substitutes but less than the full salary she would have been paid on appointment under contract. She was not then granted pension rights or fringe benefits.
She was regularly appointed under contract effective September 1, 1970 and annually thereafter through the 1972-1973 academic year. She served in the system until June 30, 1973. Thereafter she was refused further employment in the Waldwick schools.
She appealed to the Commissioner of Education, claiming tenure. The Commissioner held that she had acquired tenure as a teacher in the Waldwick schools and ordered her reinstated with back pay.
The Waldwick Board of Education appealed to the State Board of Education. The Law Committee recommended that the Board affirm the Commissioner's determination and the Board affirmed with two members dissenting. The Waldwick Board of Education appeals.
The case arises under the Teacher's Tenure Law, N.J.S.A. 18A:28-1 et seq. N.J.S.A. 18A:28-5 provides in part as follows:
The services of all teaching staff members including all teachers, * * * and such other employees as are in positions which require them to hold appropriate certificates issued by the board of examiners, serving in any school district or under any board of education, excepting those who are not the holders of proper certificates in full force and effect, shall be under tenure during good behavior and efficiency and they shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause and then only in the manner prescribed by subarticle B of article 2 of chapter 6 of this title, after employment in such district or by such board for:

* * * * * * * *
(b) three consecutive academic years, together with employment at the beginning of the next succeeding academic year; or
(c) the equivalent of more than three academic years within a period of any four consecutive academic years;

* * * * * * * *
*181 It is established law that time spent teaching in a school system as a substitute teacher dose not count toward tenure. Schulz v. State Bd. of Ed., 132 N.J.L. 345 (E. & A. 1945). It is equally well settled that the designation of a teacher as a substitute by the employing board of education does not control. It is the nature of the employment in fact that determines whether a teacher is working as a substitute or a regular teacher. Downs v. Hoboken Bd. of Ed., 13 N.J. Misc. Rep. 853, 854, 181 A. 688 (Sup. Ct. 1935); Jersey City Board of Ed. v. Wall, 119 N.J.L. 308 (Sup. Ct. 1938).
The hearing examiner found and the Commissioner of Education specifically adopted the finding that the plaintiff was not employed as a substitute but as a regular teacher for the period from April 27, 1970 through June 30, 1970. He found that she was employed to teach a class which had no regular teacher, for the rest of the term. She did not temporarily take the place of a teacher. She was permanently certified to teach grades from kindergarten through eight.
During the initial period she: (1) prepared and used her own lesson plans, (2) prepared report cards, (3) corrected assignments, (4) conferred with parents, (5) participated in Back to School Night, and (6) performed all other usual teaching duties. She continued to perform the same duties in the same grade under annual contracts for two additional years and in kindergarten for the third additional year. She originally applied for and anticipated continued employment. She was in fact steadily employed for three school years and two months.
The facts that for the first two months plaintiff was paid on a per diem basis, paid less than regular teachers but more than substitutes in that school system, that she did not participate in pension rights and fringe benefits, did not establish her to be a substitute. A substitute is one acting for or taking the place of another. One performing the full duties of a teacher for the balance of the school year is not a substitute.
*182 The hearing examiner held:
* * * there can be no question herein about the duties performed by petitioner during all of the period April 27, 1970 through June 1973. They were clearly the duties of a regular teaching staff member employed by the Board, and this clear fact is not tarnished in any way by the Board's nomenclature for the work or the rewards it offered when the work was performed.
Thus, having completed an employment "* * * of more than three academic years within a period of four academic years * * *" N.J.S.A. 18A:28-5, petitioner has complied with the statutory prescription and is "under tenure."
The Commissioner held:
The Commissioner is in agreement in all points with the findings of the hearing examiner and holds them as his own. Most important are the findings that petitioner, although designated by Board resolution as a substitute teacher (P-3), did in all respects perform the work of a regular teacher from April 27, 1970 through June 1970. Her continued employment thereafter, for an uninterrupted period of three academic years, establishes that she performed the duties of a regular teacher uninterruptedly for the equivalent of more than three academic years within a period of four consecutive academic years. N.J.S.A. 18A:28-5.
The Commissioner has consistently construed the tenure statute not to include substitute teachers employed to do particular substitute work for absent teachers. Herein there was no absent teacher, however, and no evidence that the Board sought to replace petitioner from April 27, 1970 through June 19, 1970. Rather, the evidence leads to the conclusion that the Board properly evaluated her teaching performance during the controverted period and on June 8, 1970, offered her a contract for the subsequent school year. (P-4).
The recognized purpose of the probationary period prior to acquisition of tenure is to afford the employing board an opportunity to properly evaluate its employee.
In the instant matter, the Commissioner, having weighed the evidence herein presented, concludes that the necessary probationary period in excess of three academic years within a four-year period was served by petitioner as a regular teacher. Nomenclature chosen at the convenience of the Board, attendant emoluments connected with employment, or the lack thereof, may in no way deprive petitioner of the statutory cloak of protection provided by tenure resulting from her years of service.
The Board could easily have avoided the acquisition of tenure by petitioner, had it so chosen, by the termination of her employment at any time prior to April 27, 1973.
*183 The Waldwick board appealed to the State Board of Education. The Law Committee of the State Board reported in part as follows:
After review of the record in this matter, the Law Committee finds that: (1) petitioner-appellee's initial salary and employment period from April 27, 1970 until the end of the school year 1970, was sanctioned by unanimous vote of the Board of Education; (2) petitioner-appellee is a fully-certified teacher who was continuously employed as a regular, full-time teacher from April 27, 1970 until the end of the 1970 school year; and (3) petitioner-appellee was continuously employed as a regular, fully-certified teacher for three academic years thereafter  1970-71, 1971-72 and 1972-73.
We do not find the absence of a written contract from April 27, 1970 until the end of 1970 school year to be dispositive of the ultimate question of petitioner-appellee's tenure accrual. * * * And, further, the amount and method of salary payments for the period from April 27, 1970 until the end of the 1970 school year may not deprive her of her rights as a teacher having tenure.
The Law Committee recommended affirmance. The State Board affirmed for the reasons stated in the Commissioner's decision. Two members of the Board dissented. In their opinion they argued that plaintiff was a substitute teacher for the first two months of her employment. The reasoning is not persuasive.
It is argued that the appointment of plaintiff under the designation "substitute teacher" was not a subterfuge but good faith, regular policy of the Waldwick Board of Education. It is understandable that the board may wish to save money by hiring a teacher at less than full pay, and may wish to avoid placing an employee in the pension system and under fringe benefits for less than a school year since such an appointee may not be appointed for the following year or years. No evil intent need be ascribed to the school authorities. An appointee would not obtain tenure or any right to reemployment at the end of two months of probationary service no matter whether denominated a substitute or a regular teacher. It is the continuation of this employment for three additional years that gives rise to tenure. The local board has a full three years in which to terminate an unsatisfactory *184 teacher. It is absurd to suggest that an affirmance of this case would curtail the right of the board to legitimate employment of substitutes. The employment of a substitute teacher to teach a class continuously for more than three years is inherently a violation of the intent of the Teacher's Tenure Law.
In Viemeister v. Prospect Park Bd. of Ed., 5 N.J. Super. 215, 218 (App. Div. 1949), Judge (late Justice) Jacobs said:
The tenure provisions in our school laws were designed to aid in the establishment of a competent and efficient school system by affording to principals and teachers a measure of security in the ranks they hold after years of service. They represent important expressions of legislative policy which should be given liberal support, consistent, however, with legitimate demands for governmental economy.
In Downs v. Hoboken Bd. of Ed., supra, the former Supreme Court said:
The Teachers' Tenure Act * * * is not a gesture, but a provision of law to protect teachers in their positions by reason of years of service.
In Jersey City Bd. of Ed. v. Wall, supra, Justice Bodine said:
The petitioner, like many of the other so-called substitutes, was assigned to a regular position in the same manner as teachers with tenure. The device adopted cannot defeat the purpose of the act, which was designed to give a measure of security to those who served as teachers three consecutive academic years.
Whether plaintiff was employed as a regular teacher or as a substitute teacher during the critical first two months is not a question of law. It is a question of fact to be determined by those with expert knowledge of school practices. The Commissioner of Education, subject to the supervision of the State Board of Education, is charged with the responsibility of administering the school system as an expert executive and *185 finder of fact. His determinations on school matters are inherently more persuasive than the determination of a trial jury.
The determinations of a judge sitting without a jury must be affirmed if it "could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146 (1964). That is true even though the appellate judges are presumably as well or better informed on the subject matter than the trial judge. The same rule has been applied to the review of appeals from administrative boards, with one addition  in the case of agency review, with due regard also to the agency's expertise where such expertise is a pertinent factor." Close v. Kordulak Bros., 44 N.J. 589 (1965); Mayflower Securities Co., Inc. v. Bureau of Securities, 64 N.J. 85, 92-93 (1973).
These rules have been specifically applied to the State Board of Education. In Thomas v. Morris Tp. Bd. of Ed., 89 N.J. Super. 327 (App. Div. 1965), aff'd with irrelevant reservation at 46 N.J. 581 (1966), Judge (now Justice) Sullivan held:
We are here concerned with a determination made by an administrative agency duly created and empowered by legislative fiat. When such a body acts within its authority, its decision is entitled to a presumption of correctness and will not be upset unless there is an affirmative showing that such decision was arbitrary, capricious or unreasonable. The agency's factual determinations must be accepted if supported by substantial credible evidence. Quinlan v. Board of Ed. of North Bergen Tp., 73 N.J. Super. 40 (App. Div. 1962); Schinck v. Board of Education of Westwood Consol. School Dist., 60 N.J. Super. 448 (App. Div. 1960) [at 332]
The State Board there denied tenure to a local superintendent of schools and the Appellate Division affirmed on the basis of "substantial credible evidence in the totality of the facts and circumstances from which the State Board could have reasonably found" as the State Board did find.
In the case before us there is adequate evidence supporting the determination of the hearing examiner, the Acting State *186 Commissioner of Education, and the Law Committee and a large majority of the State Board. Under the law, affirmance is commanded.
I vote to affirm.