RITA SPIEWAK, PEGGY DABINETT, PATRICIA O'REILLY AND THE RUTHERFORD EDUCATION ASSOCIATION, PETITION-ERS-APPELLANTS, v. BOARD OF EDUCATION OF RUTHER-FORD, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 8, 1981—Decided June 22, 1981.

Before Judges ALLCORN, PRESSLER and FURMAN.

*Louis P. Bucceri* argued the cause for appellants (*Goldberg & Simon*, attorneys; *Theodore M. Simon* of counsel).

*Irving C. Evers* argued the cause for respondent.

Statement in lieu of brief on behalf of State Board of Education was filed by *James R. Zazzali*, Attorney General of New Jersey (*John J. Degnan*, former Attorney General of New Jersey; *M. Kathleen Duncan*, Deputy Attorney General, of counsel and on the statement).

The opinion of the court was delivered by

PRESSLER, J. A. D.

This is a teacher-tenure controversy.

Petitioners Rita Spiewak and Peggy Dabinett have each been employed by the Rutherford Board of Education (district) since the early 1970s as "Beadleston" supplementary teachers of the handicapped,[1] and petitioner Patricia O'Reilly has been employed by the Rutherford Board of Education since February 1973 as a "Title I" remedial reading teacher. All three appeal from a determination of the State Board of Education denying them status as members of the teaching staff of the district and accordingly declaring them ineligible for the acquisition of tenure. In so concluding, the State Board reversed the contrary conclusion of the Commissioner of Education, who had generally accepted the recommendations of the hearing examiner.

The State Board's sole expressed basis for its action was its reliance on this court's opinion in *Point Pleasant Beach Teacher's Ass'n v. Callam*, 173 *N.J.Super.* 11 (App.Div.1980), certif. den. 84 *N.J.* 469 (1980). We reverse. For the reasons herein set forth, it is our view that the holding of *Point Pleasant Beach* is inapplicable to the undisputed facts of this case and that its holding has been overbroadly interpreted by the State Board. Indeed, we are not without reservations as to the viability of the apparent breadth of the *Point Pleasant Beach* holding.

The reference point in this, as in all teacher-tenure controversies, must be *N.J.S.A.* 18A:28–5, which provides in relevant part

---

[1]See *N.J.S.A.* 18A:46–1 *et seq.*, legislation originally sponsored by Senator Beadleston, requiring special educational services for the handicapped.

that all teaching staff members holding the "proper certificates" shall be under tenure after employment by the district for:

(a) three consecutive calendar years, or any shorter period which may be fixed by the employing board for such purpose; or

(b) three consecutive academic years, together with employment at the beginning of the next succeeding academic year; or

(c) the equivalent of more than three academic years within a period of any four consecutive academic years;

"Teaching staff member" is defined by *N.J.S.A.* 18A:1–1 as ... a member of the professional staff of any district or regional board of education, or any board of education of a county vocational school, holding office, position or employment of such character that the qualifications for such office, position or employment, require him to hold a valid and effective standard, provisional or emergency certificate, appropriate to his office, position or employment, issued by the State Board of Examiners and includes a school nurse.

 The facts here compel the conclusion that all three petitioners are encompassed by the definition of teaching staff member and that each, at the time of the administrative hearing, had met the employment requirements of *N.J.S.A.* 18A:28–5.

More specifically, the record shows that Spiewak was first employed in October 1971 as a "Beadleston" supplemental instructor in the combined junior and senior high school and had, up to the time of the hearing below, been so employed during each successive academic year. Contrary to so-called regular contract teachers in the district, and except for academic year 1973–1974, she began work several days after the start of the academic year and completed her work several days before the conclusion of the academic year. For the academic year 1973–1974, for reasons which are not explained, she had a contract, and thus was employed for the same period of time as all other contract teachers. During the entire period of her employment, she was paid on an hourly basis for her actual instructional time. At some point in her employment she was also paid for two hours of preparation time a week. That constituted her entire remuneration. She was not paid for her lunch break. She received no sick leave. She received no other emoluments of

employment, such as paid vacations, personal days or insurance coverage. When school was not in session, as for example on a holiday or snow day, she was not paid. Nor was she admitted into the Teacher's Pension and Annuity Fund.

When she first began to work for the district, Spiewak's employment was clearly part-time and her responsibilities limited to three hours of instruction a day. Her duties continued to expand so that by the 1974–1975 academic year she was teaching for five hours a day five days a week, and by the 1977–1978 academic year she was teaching seven 40-minute instructional periods daily and using a half-period daily for preparation time. She was not assigned a homeroom or such other duties as cafeteria, playground or hall supervision; she had no extracurricular responsibilities and she was not required to be at school as early in the morning as regular teachers were.

Her teaching responsibilities and ancillary functions of conferring, reporting, planning and the like were part of the district's special services program for handicapped students as mandated by *N.J.S.A.* 18A:46–1 *et seq.* Students at the secondary level, who were classified as neurologically, emotionally, mentally or physically impaired or handicapped, were referred to Spiewak for special educational assistance on a tutorial basis. Working with one or two students at a time and following generally the child study team's "prescription," her job was to provide such appropriate academic supplementation as each student individually required. Her functions, therefore, together with the entire special services staff, were intended and designed to meet the mandate of *N.J.S.A.* 18A:46–13, which provides in part that

It shall be the duty of each board of education to provide suitable facilities and programs of education for all the children who are classified as handicapped under this chapter except those so mentally retarded as to be eligible for day training pursuant to *N.J.S.A.* 18A:46–9. The absence or availability of a special class facility in any district shall not be construed as relieving a board of education of the responsibility for providing education for any child who qualifies under this chapter.

The district employs four teachers—Spiewak, Dabinett and two others—to perform the instructional function of the special

services program, which is in part funded by the State. The two other teachers are assigned to the elementary school; both are under contract and are concededly tenurable. Spiewak and Dabinett are assigned to the secondary level. Dabinett's situation does not differ in any material respect from Spiewak's. It was, moreover, the testimonial opinion of the district's coordinator of the program that its function, concept and operation, particularly in terms of instructional responsibilities and techniques, are not materially different on the secondary level than on the elementary level.

Petitioner O'Reilly has been employed by the district in various positions since 1971, and since February 1973 has been continuously employed as a Title I tutor under a federal program designed to provide remedial training in reading for elementary school pupils. See 20 *U.S.C.A.* § 236 *et seq.* She holds a teaching certificate for kindergarten through eighth grade. Her employment situation, *vis-à-vis* noninstructional duties, salary and other emoluments of employment, are essentially the same as those of Spiewak and Dabinett although she is accorded Blue Cross and Blue Shield benefits. Her actual instructional week of five hours a day five days a week is as long, if not longer, than that of regular elementary teachers, and as in the cases of Spiewak and Dabinett, her instructional responsibilities have substantially increased since her initial employment. She works with student groups of not more than four at a time.

In view of these facts, it is at least *prima facie* clear that each of the petitioners is and has been a regular and continuously employed professional staff member entitled to tenure upon the passage of the requisite time specified by the statute. As the hearing examiner pointed out, the fact that petitioners are paid hourly or *per diem* salary has no legal effect on this conclusion, and the contrary is not argued. *See, e. g., Jersey City Bd. of Ed. v. Wall,* 119 *N.J.L.* 308 (Sup.Ct.1938). Nor do the facts that these petitioners use a tutorial instructional technique and that

they have no homeroom or other noninstructional assignments, militate against their professional staff status. All that *N.J. S.A.* 18A:1–1 requires as a qualification of professional staff membership is employment by the board in a position requiring appropriate certification. And all three petitioners meet that criterion. Thus, the only basis for denying these petitioners tenurable status is the holding in *Point Pleasant Beach,* supra.

As we read *Point Pleasant Beach,* which addressed only the status of Title I teachers, its result was based primarily on the premise that where employment is offered and accepted on a temporary basis and where its temporary nature is understood by both employer and employee to be one of its essential predicates, such employment cannot then be relied on by the employee as the basis of tenure. We further note that the source of funds for the program and the uncertainty both of continued funding and its quantum were not apparently relied on by the court in *Point Pleasant Beach* as facts of independent significance but rather as indicia of intention regarding the nature of the employment. We do not disagree with these basic premises of *Point Pleasant Beach* and we do not suggest that they were not applicable to the facts then before the court.

We do not, however, regard the *Point Pleasant Beach* rationale as applicable here. First, in our view the nature of the employment is not as immutably fixed by its original parameters. Indeed, the initial periods of employment of all these petitioners do seem to have been premised on the temporary character of the employment. The indubitable fact, however, is that by the 1973–1974 academic year, if not before, the original temporary character of the employment changed, the programs pursuant to which petitioners were employed became well-established and integrated with the regular instructional program, their employment became regular and continuous, and their services by whomever they might be performed were clearly required indefinitely into the future.

■ Furthermore, we are satisfied, considering the nature of these programs, that the immediate source of their funding cannot be regarded as dispositive. We have already pointed out that the special services program for the handicapped pursuant to which Spiewak and Dabinett are employed is mandated by state statute. The district, irrespective of funding, thus has no present choice but to continue this program. The same is apparently true of the remedial reading program, which is presently funded by the Federal Government. As the hearing examiner cogently pointed out, the Public School Education Act of 1975, *N.J.S.A.* 18A:7A–1 *et seq.*, was enacted in response to the Supreme Court dictate that the constitutional mandate of a thorough and efficient system of free public schools be complied with. *See, e. g., Robinson v. Cahill,* 69 *N.J.* 133 (1975). A major element of a thorough and efficient system of free public education has been legislatively defined as "Programs and supportive services for all pupils especially those who are educationally disadvantaged or who have special educational needs." *N.J.S.A.* 18A:7A–5(c). We deem it beyond cavil that elementary school children unable to read at grade level are included within this mandate and that remedial programs for such children are encompassed by this legislative directive. Certainly, the programs prescribed by *N.J.S.A.* 18A:46–1 *et seq.* are also generally encompassed within the definitional scope of this directive. Thus, it appears to us that where a teacher is regularly and continuously employed to perform a legislatively mandated educational function, as all three petitioners here were, the source of funds by which they are paid must be deemed essentially irrelevant to the question of their status as teaching staff members.[2]

---

[2]Clearly, the unavailability of necessary funds would not, despite a teacher's acquisition of tenure, ultimately preclude a board of education from abolishing any position for good faith economic reasons. *See, e. g., Weider v. High Bridge Bd. of Ed.,* 112 *N.J.L.* 289 (Sup.Ct.1933).

In short, *Point Pleasant Beach* was not, we are convinced, intended to constitute a license for the circumvention of the tenure laws. For the reasons herein set forth, we are satisfied that its application in these circumstances would constitute just such a circumvention. *Cf. Schulz v. State Bd. of Ed.*, 132 *N.J.L.* 345, 353 (E. & A. 1945); *Biancardi v. Waldwick Bd. of Ed.*, 139 *N.J.Super.* 175, 178 (App.Div.1976), aff'd o.b. 73 *N.J.* 37 (1977).

█ Petitioners by these proceedings sought not only a declaration of their tenure status but also the retroactive granting of sick leave and other emoluments of that status. The hearing examiner concluded that all were entitled to sick leave pursuant to *N.J.S.A.* 18A:30–2, which accords that benefit to all district employees "who are steadily employed . . . or who are protected by tenure," except those covered by Civil Service. The Commissioner of Education agreed and so do we. Petitioners were obviously steadily employed within the statutory intendment irrespective of the tenure question. With respect to other emoluments, the Commissioner concluded that petitioners' "services entitled each of them to the emoluments and benefits afforded all other teaching staff members employed by the district although on a *pro rata* basis." We see no reason to disturb that conclusion.

The determination of the State Board of Education is reversed and the determination of the Commissioner of Education is reinstated. The matter is remanded to the Commissioner for the fixing of the date upon which tenure accrued and the retroactive emoluments to which petitioners are entitled, in the event the parties cannot agree on these issues.