No. 52,531

April D. Schmidt, *Appellee/Cross-Appellant,* v. Unified School District No. 497, Douglas County, Kansas, *Appellant.*

(644 P.2d 396)

Opinion filed May 8, 1982.

*Peter K. Curran,* of Petefish, Curran & Immel, of Lawrence, argued the cause and was on the brief for the appellant.

*Patricia E. Riley,* of Ralston, Frieden & Weathers, P.A., of Topeka, argued the cause and was on the brief for the appellee/cross-appellant.

The opinion of the court was delivered by

Herd, J.: This is a declaratory judgment action brought by April D. Schmidt, a teacher, against Unified School District No. 497 of Lawrence. Appellee sought a declaration she was a tenured teacher of appellant and that the Board's notice of nonrenewal of her teaching contract was deficient because it did not state the reasons for her nonrenewal and did not mention her right to a due process hearing. The district court entered judgment for Ms. Schmidt, from which the Board appeals. After judgment and the notice of appeal, appellee filed a petition for further relief, seeking a damages award. Following an evidentiary hearing the district court granted Ms. Schmidt judgment in the amount of

$7,914.50 and costs. The Board appeals. Ms. Schmidt cross-appeals, contesting the amount of the damages judgment.

April Schmidt was first employed by U.S.D. # 497 on September 4, 1973, as a part-time teacher under Title I of the Elementary and Secondary Education Act, 20 U.S.C. § 236 *et seq.,* a federally funded program. She taught remedial reading. She worked under this initial contract through the balance of the 1973-74 school year. Because of the uncertain nature of funding and the Board's awareness of the Continuing Contract Law, appellant gave Ms. Schmidt timely written notice of nonrenewal of her contract in the spring of 1974.

In July of 1974 the Board and Ms. Schmidt entered into a new part-time contract under the same Title I program, with her duties to commence August 19, 1974, and continue for the balance of the 1974-75 school year. On December 11, 1974, Ms. Schmidt resigned from that position. On March 1, 1977, Ms. Schmidt and the Board entered into another contract. She was to teach part time under the same federally funded program for the balance of the 1976-77 school year. Notice of nonrenewal of that contract was timely given shortly thereafter. Ms. Schmidt was then hired to teach summer school under the Title I program from June 6, 1977, to June 30, 1977.

On September 20, 1977, Ms. Schmidt interviewed for another Title I teaching position with the Board for the 1977-78 school year. On September 22, 1977, the parties signed an agreement which provides in pertinent part:

"THIS CONTRACT, entered into this 22nd day of September, 1977, by and between Lawrence Unified School District No. 497, Douglas County, State of Kansas, hereinafter called 'Board', and April Schmidt, hereinafter called 'Teacher.'

"The parties hereto agree that the Teacher is employed in the position of Title I Reading (.4 time) and shall perform the duties of such position for the school year 1977-78 on step 8 BS 20 at the yearly contract salary of $4,084.00 to be paid in substantially equal installments paid once (or more often when agreed upon) each month commencing in September of the school year. This contract covers the school year commencing July 1, 1977, and ending June 30, 1978. The teacher shall report for duty on September 26, 1977. 8 BS 2- = $11,732.00 divided by 185 days = $63.42 day x 161 days = $10,210.62 x .4 = $4,084.00."

Notice of nonrenewal of this contract was given in the spring of 1978. From June 5 to July 14, 1978, Ms. Schmidt taught summer school under the Title I program.

On June 6, 1978, Ms. Schmidt was, for the first time, hired by the Board as a regular full-time elementary teacher to commence

work on August 21, 1978. On April 11, 1979, the Board gave Ms. Schmidt written notice of nonrenewal of her teaching contract for the 1979-80 school year. Ms. Schmidt complained this notice did not comply with due process protections afforded teachers when nonrenewal is proposed. The Board responded Ms. Schmidt was not a tenured teacher and thus not entitled to those protections. Ms. Schmidt then filed this action for declaratory judgment. The district court agreed with Ms. Schmidt, finding the April 11, 1979, notice insufficient.

Preliminary to a discussion of the issues the relevant statutes should be noted. K.S.A. 72-5436 through -5446 provide due process protections for teachers. These protections include the right of a teacher to receive a notice containing the reasons for nonrenewal of a contract and a due process hearing at which the Board of Education must bear the burden of proving by substantial evidence good cause for nonrenewal. See K.S.A. 72-5438 and 72-5442; *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 605 P.2d 105 (1980). The purpose of the safeguards "is to protect competent and worthy instructors and other members of the teaching profession against unjust dismissal of any kind . . . ." *Million v. Board of Education,* 181 Kan. 230, Syl. ¶ 1, 310 P.2d 917 (1957). See *Gillett,* 227 Kan. at 76. K.S.A. 72-5445 provides the statutory protections apply:

"[O]nly to those teachers who have at any time completed two (2) consecutive years of employment in the school district, area vocational-technical school, or community junior college then currently employing such teacher, except where the teacher alleges his or her termination or nonrenewal is the result of his or her having exercised a constitutional right."

K.S.A. 72-5436 defines "teacher" as:

"[A]ny professional employee who is required to hold a teacher's certificate in any public school, and any teacher or instructor in any area vocational-technical school or community junior college, except that 'teacher' shall not include supervisors, principals, superintendents or any person employed under the authority of K.S.A. 72-8202b, or amendments thereto, or any person employed in an administrative capacity by any area vocational-technical school or community junior college."

The Board first contends Ms. Schmidt is not a "teacher" within the meaning of K.S.A. 72-5436 because the Teacher Tenure Law, as it is commonly called, did not intend part-time employment to qualify a teacher for due process protections, especially when the program is federally funded, allowing the school board no control over its continuation.

A cursory examination of the language of K.S.A. 72-5436 reveals no attempt to limit the meaning of "teacher" to full-time employees. Similarly, there is no mention of the source from which a teacher is paid. Before construing the statute, however, we should review the pertinent rules of statutory construction. First, the fundamental rule, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. *Southeast Kansas Landowners Ass'n v. Kansas Turnpike Auth.,* 224 Kan. 357, 367, 582 P.2d 1123 (1978); *Easom v. Farmers Insurance Co.,* 221 Kan. 415, 421, 560 P.2d 117 (1977). If such intent can be determined from the language itself, the court is not warranted in looking beyond the terms of the statute. *Callaway v. City of Overland Park,* 211 Kan. 646, 650, 508 P.2d 902 (1973). The language of K.S.A. 72-5436 is plain and unambiguous. The legislative intent evidenced by the statute is, with a few specific exceptions, that the term "teacher" includes all professional employees required to hold a teaching certificate.

The out-of-state cases relied on by appellant to support its argument are not persuasive. In *Nyboe v. Allen,* 7 App. Div. 2d 822, 181 N.Y.S.2d 132 (1958), it was held part-time teachers were not within the protection of the New York tenure law. Although that rule has become well established in New York, it has recently been limited in its application. See, *e.g., Matthews v. Nyquist,* 67 App. Div. 2d 790, 412 N.Y.S.2d 501 (1979); *Schlosser v. Bd of Educ,* 62 App. Div. 2d 207, 404 N.Y.S. 871 (1978). Further, the *Nyboe* case relied on a New York statute stating "[T]he commissioner's decision on a controversy wholly within the educational system of the State is ordinarily final and conclusive." 7 App. Div. 2d at 822.

The Board relies heavily on *Point Pleasant Beach Teachers Ass'n v. Callam,* 173 N.J. Super. 11, 412 A.2d 1352 (1980), a case dealing with what appellant considers the "identical question" involved here. There the court held teachers employed under Title I were not "teaching staff members" within the meaning of the New Jersey Teacher Tenure statute. The court based its decision on the fact there were "many areas where the relationship between petitioners and the board differed substantially from the relationship between the usual teaching staff member

and the board." For example, the Title I teachers were hired annually without a written contract on an "as needed" basis. They were paid by the hour. They were not given a notice of termination each year. Finally, because funding came from the federal government and was therefore uncertain the Title I program required the "flexibility" of not having to grant these teachers tenure. 173 N.J. Super. at 17-18.

The application of the *Point Pleasant Beach* case has recently been narrowed. *Spiewak v. Rutherford Bd. of Ed.,* 180 N.J. Super. 312, 434 A.2d 1105 (1981), involved denial of tenure to full-time special education and Title I teachers. In holding *Point Pleasant Beach* was not "intended to constitute a license for the circumvention of the tenure laws," (p. 320), the court stated:

"We do not, however, regard the *Point Pleasant Beach* rationale as applicable here. First, in our view the nature of the employment is not as immutably fixed by its original parameters. Indeed, the initial periods of employment of all these petitioners do seem to have been premised on the temporary character of the employment. The indubitable fact, however, is that by the 1973-1974 academic year, if not before, the original temporary character of the employment changed, the programs pursuant to which petitioners were employed became well-established and integrated with the regular instructional program, their employment became regular and continuous, and their services by whomever they might be performed were clearly required indefinitely into the future.

"[2] Furthermore, we are satisfied, considering the nature of these programs, that the immediate source of their funding cannot be regarded as dispositive. We have already pointed out that the special services program for the handicapped pursuant to which Spiewak and Dabinett are employed is mandated by state statute. The district, irrespective of funding, thus has no present choice but to continue this program. The same is apparently true of the remedial reading program, which is presently funded by the Federal Government." pp. 318-19.

See also *Hamilton Tp., Etc. v. Hamilton Tp. Bd. of Ed.,* 180 N.J. Super. 321, 434 A.2d 1109 (1981), where a different panel of judges followed *Point Pleasant Beach* and denied tenure based on the belief the legislature did not intend to award tenure "in potentially transient teaching situations such as state programs dependent on never certain federal funding." p. 323.

The factor weighing most heavily against Ms. Schmidt here is her part-time status. However, other considerations are in her favor. For example, Ms. Schmidt was employed under written contracts and each year the Board gave her notice of nonrenewal. These factors, coupled with the plain language of the statute, establish Ms. Schmidt's contention she is a "teacher" within the meaning of K.S.A. 72-5436(*a*). We so hold.

Appellant next contends Ms. Schmidt has not completed the two consecutive years of employment in the school district required by K.S.A. 72-5445 to acquire tenure.

The determination of this issue essentially boils down to an interpretation of the phrase "at any time completed two (2) consecutive years of employment . . . ." contained in K.S.A. 72-5445. The rules of statutory construction apply with equal force here. In addition to those previously mentioned the following maxims are relevant. "In determining legislative intent, courts are not limited to a mere consideration of the language employed, but may properly look to the historical background of the enactment, the circumstances attending its passage, the purposes to be accomplished, and the effect the statute may have under the various constructions suggested." *Southeast Kansas Landowners Ass'n v. Kansas Turnpike Auth.*, 224 Kan. at 367. "Words in common usage are to be given their natural and ordinary meaning in arriving at the proper construction of a statute." *Stephens v. Van Arsdale*, 227 Kan. 676, 684, 608 P.2d 972 (1980).

The trial court purported to "look to the substance of classroom teaching" and held since Ms. Schmidt was in the classroom teaching from March of 1977 through May or June of 1979 she had achieved tenure under the statute. The trial court determined the summer session she taught in June of 1977 compensated for the late start in the fall of 1977.

Appellee argues "year," within the context of K.S.A. 72-5445, means calendar year, so the two-year period should be calculated from the date a teacher is employed regardless of whether work begins in the middle of a school term.

However, it should be noted the Missouri court has examined this issue within the context of that state's teacher tenure law and held in *Valter v. Orchard Farm School Dist.*, 541 S.W.2d 550, 555 (Mo. 1976), "year" referred to a school year commencing July 1 and ending the following June 30 and that a contract for part of such year would not qualify as one of the years required to obtain tenure. A different result was reached in *Nazzaro v. Merrimack School Dist.*, 118 N.H. 287, 291-92, 385 A.2d 230 (1978). There it was held because the legislature did not qualify the term "years" within the context of the New Hampshire Teacher Tenure Law, it meant calendar years.

The Missouri court's decision is not persuasive. The language of the Kansas act supports the calendar year interpretation. It provides tenure is to be granted a teacher who *"at any time"* completes two consecutive years of employment. We hold the act means calendar years permitting a teacher to complete the two-year probation period at any time during the school term. K.S.A. 72-5445.

Appellant next claims even if the calendar year interpretation is adopted, Ms. Schmidt still has not met the requirements of K.S.A. 72-5445. The Board contends Ms. Schmidt was not an employee from July 1, 1977, when summer school was over, until September 22, 1977, when she was again hired for the Title I teaching position. Since the period from September 22, 1977, to April 11, 1979, when notice of nonrenewal was given, is less than two years, the Board argues Ms. Schmidt could not possibly have had tenure.

There is little authority on this issue. The Board's position is understandable. Although the "purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectable interest," the probationary period is designed to give school boards a chance to determine a teacher's competency in a certain position before tenure is attained. *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. 895, 903 (D. Kan. 1977). As such, awarding tenure to a teacher who has been employed only a portion of two different years gives the statute a tortured construction. Further, "consecutive" is defined as: "Successive; succeeding one another in regular order." Black's Law Dictionary 376 (4th ed. 1951). To meet the consecutive years requirement, Ms. Schmidt would thus have had to be employed from March 1, 1977, to February 29, 1978, and from March 1, 1978, to February 28, 1979. Here Ms. Schmidt was employed from March 1, 1977, to June 30, 1977, and from September 26, 1977, to June 30, 1979. There was a one month gap after the beginning of the school term which destroyed the successive nature of her employment periods.

On the other hand, appellee points to a definite problem with appellant's argument. She argues "[t]he Board should not be permitted to deny plaintiff tenure by the device of delaying for one month her assignment to a teaching position." She cites *Ricca*

*v. Board of Educ,* 47 N.Y.2d 385-391, 391 N.E.2d 1322 (1979), where the New York court stated:

"A school district may not avoid strict application of the statutory scheme for granting tenure to qualified and experienced teachers by the stratagem of unduly delaying formal appointment of a teacher to a position which that teacher is in fact already filling. The tenure system is not an arbitrary mechanism designed to allow a school board to readily evade its mandate by the creation of technical obstacles on a qualified teacher's trial to tenure (see *Matter of Baer v. Nyquist,* 34 N.Y.2d 291[, 357 N.Y.S.2d 442, 313 N.E.2d 751 (1974)]."

Although this sort of abuse is possible under the Kansas statute, it is not the case here. A good-faith uncertainty of federal funding was the reason for the gap in Ms. Schmidt's employment history.

We hold under K.S.A. 72-5445 a teacher's tenure time clock starts running the first day of employment during the regular school term, whether part-time or full-time, and continues running so long as the teacher is employed as a teacher during the regular school term. Summer employment or unemployment shall be disregarded. Any good-faith gap in employment during the regular school term stops the clock. In the instant case, April Schmidt's probationary period started running March 1, 1977, but was interrupted from the date school started, August 22, 1977, to September 26, 1977, during which time she was not employed. This gap defeated the requirement of employment for "two consecutive years." There being no evidence of bad faith on the part of appellant, we conclude appellee is a nontenured teacher and not entitled to due process under K.S.A. 72-5445.

In light of the foregoing the issue of awarding attorney fees under 42 U.S.C. § 1988 need not be discussed.

The judgment of the trial court is reversed and the case remanded with instructions to enter judgment for the appellant.

PRAGER, J., dissenting: I respectfully dissent. Although I am in agreement with a major part of the majority's opinion, I dissent from Syllabi ¶¶ 3 & 4, and the corresponding portion of the opinion. The majority has decided that a teacher's contract of employment must run continually through two consecutive years without any good-faith gaps during the regular school term in order for that teacher to acquire tenure. This decision effectively puts all presently nontenured teachers in great peril. A school board can now delay the starting date of employment for a teacher in any given term by a couple of days and thereby deny the

teacher the right to count that term as part of the "two consecutive years." I do not think the good faith requirement that the majority places upon the school is sufficient to insure that the rights of teachers will not be abridged.

It is my conclusion the legislature intended by the passage of K.S.A. 72-5445 that, whenever a teacher is employed at any time during a school year term, the teacher is entitled to count that term as being one of the years required for tenure. The contract, which Ms. Schmidt signed, states clearly: "This contract covers the school year commencing July 1, 1977, and ending June 30, 1978." Her salary was based upon the pay scale for an entire year's teaching, although she was paid for only the days she actually taught. This is the same contract which every other teacher in the district signed. The contract was approved by the board on June 13, 1977. Thus, it is clear that the board considered Ms. Schmidt to be employed for the entire 1977-78 school term.

The majority's opinion makes it possible for a board to deny tenure to a teacher for any number of reasons. Two examples will suffice: Suppose a nontenured teacher has to take a few days leave of absence without pay during a school term because of personal reasons. It would appear that since the school board in good faith allowed her to do this, the gap in employment would prevent the teacher from using that year as part of the "two consecutive years" required for tenure.

Another example: Suppose the school board and the local KNEA contract negotiations are not completed by the time a given school term begins. The teachers would not have a contract of employment for that term until negotiations are completed. Even if a contract is signed on the second day of the term, the nontenured teacher, by the majority's rationale, could not count that term as part of the "two consecutive years." The injustice of these examples should be apparent to all.

For these reasons, I would affirm the trial court's decision.