[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT CITY OF NEW HAVEN'S MOTION FOR SUMMARY JUDGMENT (No. 112) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (No. 115)
Laws, Ovid told us long ago, are made to prevent the strong from always having their way. Ovid. Fasti, bk. III, 1.279. One of the important devices that our society has developed to prevent the strong from always having their way is the law of civil service. Civil service laws, generated in this country a century ago to counteract the inefficiency and corruption that marred so much of late nineteenth century urban America, operate by establishing a system based on merit to reduce the discretion otherwise enjoyed by governmental authorities in appointing and promoting public officers. The Charter of the City of New Haven ("Charter") contains just such a provision. NEW HAVEN CHARTER § 160. Incredibly, the uncontroverted evidence submitted to the court in this case establishes that for a period of many years the City has, on a wholesale basis, violated its Charter in the hiring of entry level police and fire personnel. This blatant lawlessness, by persons sworn to uphold the law, in the hiring of vitally important public officers, cannot be countenanced in a society dedicated to the rule of law.
The plaintiff, Edward Henry, commenced this action by service of process in 1998 against the City of New Haven Civil Service Commission and the City of New Haven Department of Fire Service. His Substituted Complaint alleges that in 1997 he applied for a position as a firefighter but was not hired. He contends that the hiring process violated the Charter's merit selection process. He asks for injunctive relief and "[i]f necessary, the Quo Warranto removal of any person . . . who was improperly hired in his stead."
On February 16, 2001 the City filed its Motion for Summary Judgment. The Motion contends that Henry is not entitled to bring an action in quo warranto. On June 13, 2001, Henry filed his Motion for Summary Judgment. Henry's Motion contends that the City's submissions in support of its Motion establish a violation of the Charter. The competing Motions were heard together on July 2, 2001.
The evidence submitted to the court establishes that in 1997, Henry CT Page 8946 took a civil service examination for the entry-level position of "firefighter" in New Haven. On September 4, 1997, an Eligible List Roster of candidates who passed the examination with a score of 70% or more was promulgated. Henry's name appears on the list along with approximately 700 other candidates. Approximately 150 of these candidates were offered positions at the New Haven Fire Department Training Academy. Henry was not offered a position. The question presented in this case is whether the process employed by the City violated the Charter.
Charter § 160 provides that:
 Whenever [the civil service] board shall have adopted rules relative to the appointment or promotion of any class of . . . officials, no appointments or promotions within such class shall be made except from those applicants with the three highest scores of those who shall have passed an examination with a score of at least seventy percentum and have received a certificate to that effect from said board, and are upon the list of those eligible to such position or promotion under the rules of said board, excepting supernumerary police and substitute fire personnel.
The City contends that, in conducting its 1997 hiring process, it was not bound by the merit selection provisions of § 160. In support of this position it has submitted an affidavit of Noelia Marcano, the Chief Examiner/Secretary to the New Haven Civil Service Commission. Marcano's affidavit solemnly states the following:
 7. It is the practice of the Civil Service Commission to certify' entry-level firefighters under authority of the New Haven Charter Section 160 as it applies to Substitute Fire Personnel.
 8. The only position within the classification scheme of the Civil Service open for entry-level firefighters is the position of Substitute Fire Personnel.
 9. The absence of the word "Substitute" on the Eligible List Roster Number 97-37* Amended is solely due to the fact that many of the eligible persons placed on prior lists where that word was included became confused by that term.
The revelations of Marcano's affidavit are amazing enough. At argument, however, the City openly produced a truly astounding revelation. The City openly declares that for a very long period of time going back at least to the early 1970s (the Charter provision in question dates from 1951) not only have all entry-level firefighters been appointed as "substitute" firefighters but, in addition, all entry-level CT Page 8947 police personnel have been appointed as "supernumerary" police personnel. The reason for this practice, fully acknowledged by the City at argument, is that the number of entry-level police and fire personnel is sufficiently great that the merit selection provisions of § 160 would not, in the City's opinion, be workable if duly applied. It has thus been decided to avoid the inconvenience of these restrictions on a wholesale basis by deeming them inapplicable across the board.
The City argues that the provisions of § 160 must be construed in light of the longstanding practice just described. In these circumstances the City's argument is a little like the apocryphal argument made by the defendant who, having killed both of his parents, pleaded with the court for mercy because he was an orphan. Wholesale disregard of a clear Charter provision by a party, no matter how blatant and how longstanding that disregard may be, does not provide a reason for the court to participate in the charade. The duty of the court is to construe the law.
The terms "supernumerary" and "substitute" have extremely well-established meanings. A "supernumerary" is "a person employed not for regular service but for use in case of need." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2295 (1971). Similarly, a "substitute" is "[o]ne who stands in another's place." BLACK'S LAW DICTIONARY 1443 (7th ed. 1999). These meanings have long been recognized in the law. Thus it has been recognized that, in military service, a supernumerary officer is an officer not in actual service but subject to being recalled in case of need. Williams v. United States, 137 U.S. 113, 127 (1890); Commonwealthv. Lilly's adm'r, 28 Va. (1 Leigh) 525, 529 (1830). Similarly, a substitute teacher is a person who takes another's place in the event of the latter's absence. Lommasson v. School Dist. No. 1, 261 P.2d 860, 866
(Ore. 1953), modified on other grounds, 267 P.2d 1105 (Ore. 1954). AccordFitzgerald v. Saydel Consolidated School District, 345 N.W.2d 101, 105
(Iowa 1984); Schulz v. State Board of Education, 40 A.2d 663 (N.J. 1945). Positions of this description are entirely distinct from those of entry-level personnel hired for regular service.
In the context of the civil service laws, exceptions for "supernumerary police" and substitute fire personnel are entirely sensible. If the City suddenly needs additional police or fire personnel to cope with, for example, a riot or fire of exceptional magnitude, the exigencies of the situation would not permit the administration of civil service tests to newly deputized persons. Similarly, if the police or fire department were suddenly stricken with a disease of epidemic proportions, it might be necessary to quickly (and temporarily) fill their ranks with newly deputized persons. But, as mentioned, positions of this description are entirely distinct from those of entry-level personnel hired for regular service. See Fitzgerald v. Saydel Consolidated School District, supra, CT Page 8948345 N.W.2d at 105, and authorities cited therein.
The proper administration of the civil service laws is of vital importance in our modern democracy. The courts rightly condemn evasions of these laws. Schulz v. State Board of Education, supra,40 A.2d at 668. The subterfuge of designating an entry-level police officer as a "supernumerary" or an entry-level firefighter as a "substitute" where the service rendered and intended to be rendered is that of a regular police officer or firefighter cannot be countenanced. The Marcano affidavit unwittingly demonstrates that this subterfuge has become too much for even the City and its uniformed personnel. We are duly informed that many persons placed on prior eligibility lists became "confused" by the term "substitute." Such "confusion" is readily understandable the term, as so used, is entirely divorced from reality.
The City conceded at argument that if the drafters of the Charter had wished to exempt entry-level police and fire personnel from the civil service rules, they could easily have said so in so many words. They did not. Sec. 160 facially applies to initial "appointments" as well as subsequent "promotions." The City's argument that § 160, if construed to say what it emphatically says, would not be workable (by which the City means not convenient) is not an argument for a court of law. If a Charter provision is deemed inconvenient, the appropriate response is an amendment of the Charter.
It is, as mentioned, the duty of the court to construe the Charter. The court wishes to express its construction in emphatically clear terms.ENTRY-LEVEL POLICE PERSONNEL ARE NOT "SUPERNUMERARY POLICE," ANDENTRY-LEVEL FIRE PERSONNEL ARE NOT "SUBSTITUTE FIRE PERSONNEL." Positions of this description are subject to the merit selection rules of § 160.
This court has recently had occasion to construe the merit selection rules of § 160. Bombalicki v. Pastore, 7 Conn. Ops. 307 (2001).That discussion need not be repeated here. It is, however, not possible to apply the Bombalicki analysis on the basis of the present record. Neither Henry's score nor the scores of other persons on the eligible list are in evidence. Because of this lacuna, it is not possible to grant either party's Motion for Summary Judgment. In addition, the proper equitable relief, if any, that can be accorded Henry must be determined after a full evidentiary hearing.
The scope of the equitable relief that can be potentially ordered is discussed in Bombalicki, 7 Conn. Ops. at 308-09. Henry's asserted quo warranto action is problematic because, as Bombalicki explains, under the "rule of three" no one applicant has a right to the office in question. CT Page 8949 The only right that can appropriately be asserted is the right to be reconsidered in a fair manner. Henry's prayer for injunctive relief would enable the court to fashion an appropriate equitable remedy should the evidence support his right to such relief. Because, at this stage, the underlying facts are so uncertain, it is necessary to leave consideration of the appropriate remedy — and of Henry's standing to receive such a remedy — to an evidentiary hearing.
The strong language contained in this opinion is not directed at the hard-working men and women who labor heroically in the City's uniformed services every day. The City's grievous fault in blatantly ignoring its own charter in hiring entry-level police and fire personnel is not attributable to the entry-level personnel so hired. Those personnel, while ostensibly the beneficiaries of the current system, are its victims as well. Every one, other than those entrusted with the power of appointment, loses under this system. The Edward Henrys of this world are the clearest losers because they lose the right to be fairly considered in the appointment process. The citizens of New Haven also lose, because they lose the opportunity to be protected by uniformed personnel chosen on the basis of merit. Even the persons appointed lose, because, regardless of their personal merit, they lose the right to be backed up in their difficult and dangerous work by other uniformed personnel chosen on the basis of merit. The City's wholesale evasion of the civil service laws in this area comes at a high price, and the price is paid by all.
The Motions for Summary Judgment are denied.
 ___________________________ JON C. BLUE JUDGE of the SUPERIOR COURT